**Affirmed and Opinion filed October 29, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00679-CV

---

**U. S. BANK NATIONAL ASSOCIATION, SUCCESSOR-IN-INTEREST TO WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF MERRILL LYNCH MORTGAGE INVESTORS, INC. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1998-C2, Appellant**

**V.**

**DANNY M. SHEENA, Appellee**

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2011-77806A**

---

### O P I N I O N

A bank filed suit against an attorney who had not represented the bank, asserting that the attorney's actions in disbursing settlement funds at the direction of a client constituted tortious interference with contract, conversion, fraudulent transfer, negligence, and conspiracy. In this appeal, we conclude the trial court did

not err in dismissing these claims on summary judgment under the doctrine of attorney immunity. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff U.S. Bank National Association, Successor-in-Interest to Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1998-C2 ("U.S. Bank") was the successor-in-interest to the lender in a real-estate transaction with Optimum Arbor Oaks, L.L.C. As part of the transaction, Optimum Arbor Oaks executed a note, secured by a deed of trust, on the Arbor Oaks Apartments. The deed of trust contained terms that authorized U.S. Bank to litigate insurance disputes and to exercise some control over any insurance funds Optimum Arbor Oaks received for the Arbor Oaks Apartments. During Hurricane Ike, the Arbor Oaks Apartments sustained damage and Optimum Arbor Oaks retained appellee/defendant Danny M. Sheena, an attorney, to help obtain insurance funds to cover the damage. Sheena eventually obtained over $900,000 in insurance proceeds on behalf of Optimum Arbor Oaks.

A few weeks before Sheena received any of the insurance proceeds, U.S. Bank notified Optimum Arbor Oaks that Optimum Arbor Oaks was in default on the mortgage. The letter contained references to loan documents. U.S. Bank sent a copy of this letter to Sheena. Later, U.S. Bank sent a second letter, notifying Optimum Arbor Oaks that it intended to foreclose. After receiving the second letter, Sheena deposited the insurance proceeds into his trust account and disbursed the proceeds pursuant to Optimum Arbor Oaks' directions. Sheena disbursed $101,565.88 of the proceeds to himself as his attorney's fee.

U.S. Bank foreclosed on the Arbor Oaks Apartments, but the foreclosure did

2

not satisfy the outstanding amounts due under the note. U.S. Bank later filed suit against Optimum Arbor Oaks and Sheena. U.S. Bank alleged Optimum Arbor Oaks misappropriated the insurance funds and asserted a variety of claims against Optimum Arbor Oaks. U.S. Bank alleged Sheena had notice of these documents and therefore Sheena had notice of U.S. Bank's interest in the insurance proceeds. U.S. Bank asserted that in spite of knowledge U.S. Bank had an interest in the insurance proceeds, Sheena negotiated the proceeds through Sheena's trust account to himself and others. U.S. Bank alleged Sheena committed tortious interference with contract, conversion, and conspiracy.

Sheena filed a summary-judgment motion in which he asserted many summary-judgment grounds, including that he was not liable to U.S. Bank for actions he took while representing Optimum Arbor Oaks because an attorney is immune from claims brought by third parties who suffer damages from actions the attorney takes representing a client. U.S. Bank amended its petition to add claims for fraudulent transfer and negligence. Sheena filed another summary-judgment motion related to those claims. In Sheena's second summary-judgment motion, Sheena reiterated that an attorney cannot be liable to a third party for actions taken while representing a client. The trial court granted both summary-judgment motions, later severing U.S. Bank's claims against Sheena to create a final judgment.

On appeal, U.S. Bank challenges the trial court's rulings. U.S. Bank asserts that the trial court erred in granting Sheena's summary-judgment motions.

## ANALYSIS

Sheena asserted as a summary-judgment ground that he is immune from liability to U.S. Bank for any damages U.S. Bank suffered from Sheena's representation of Optimum Arbor Oaks. U.S. Bank asserts Sheena is not immune

3

from liability because his actions were fraudulent and therefore constitute an exception to the doctrine of attorney immunity.[1]

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). When a defendant moves for summary judgment on the basis of an affirmative defense, such as attorney immunity, it has the burden to conclusively prove the affirmative defense as a matter of law. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

In 1882, the Supreme Court of Texas addressed the alleged fraud of a defendant, noting evidence that when this defendant committed the alleged fraud he was acting as attorney for other participants in the alleged fraud, though not in

---

[1] U.S. Bank does not challenge the trial court's grant of summary judgment with respect to its negligence claim.

the context of litigation. *See Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (Tex. 1882). The high court rejected the notion that the defendant's status as an attorney representing a client would give the attorney immunity from liability to the party allegedly damaged by the fraud:

> Having assumed the apparent ownership of the goods, for the purpose and with the intention of consummating the fraud upon [the plaintiff], [the attorney] will not be heard to deny his liability to [the plaintiff] for the loss sustained by reason of his wrongful acts, under the privileges of an attorney at law, for **such acts are entirely foreign to the duties of an attorney**; neither will he be permitted, under such circumstances, to shield himself from liability on the ground that he was the agent of [his clients], for no one is justified on that ground in knowingly committing wil[l]ful and premeditated frauds for another.

*Poole*, 58 Tex. at 137–38 (emphasis added). Texas's intermediate courts of appeals later developed various approaches to delineating the scope of an attorney's immunity from liability to a claimant for allegedly actionable conduct in which the attorney engaged while representing a client in a matter in which the claimant was an opposing party. For example, the Fourteenth Court of Appeals concluded that though attorneys owe no negligence duty to opposing parties, attorneys still are subject to liability to nonclients, including opposing parties, based on the attorneys' fraudulent or malicious conduct, even if the attorneys' conduct was in the course of representing their client. *Lackshin v. Spofford*, No. 14-03-00977-CV, 2004 WL 1965636, at *3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.). *See also JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (stating that "it is well established that an attorney can be held liable for his own fraudulent conduct even though it was performed on a client's behalf"); *James v. Easton*, 368 S.W.3d 799, 803 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (stating that,

5

if an attorney engages in fraudulent or malicious conduct in the course of representing his client, an opposing party may assert intentional tort claims against the attorney based upon this conduct). This court decided that, if an attorney engages in fraudulent or malicious conduct in the course of representing the attorney's client, an opposing party may assert intentional tort claims against the attorney based upon this conduct. *Lackshin*, 2004 WL 1965636, at *3. This court concluded that, once a defendant filed a summary-judgment motion asserting attorney immunity, and proving as a matter of law that the allegedly actionable conduct was undertaken in the legal representation of a third-party client, the claimant was required to either raise a fact issue as to whether that conduct was undertaken in the representation of a third-party client or plead sufficient facts to show that the plaintiff asserts one or more claims that fall within an exception to attorney immunity. *Id*. Other courts of appeals took a broader view of attorney immunity. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405–08 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The Supreme Court of Texas recently addressed the legal standard applicable to attorney immunity from the claims of an opposing party in the litigation context. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–85 (Tex. 2015). The *Cantey Hanger* court stated that attorneys are not protected from liability to non-clients for their actions when the actions do not qualify as "'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Cantey Hanger, LLP*, 467 S.W.3d at 482 (quoting *Dixon Financial Servs. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.)). The high court gave as an example of such conduct an attorney's participation in a fraudulent business scheme with the attorney's client and stated

6

that the *Poole* court had found such acts to be "'entirely foreign to the duties of an attorney.'" *Id*. (quoting *Poole*, 58 Tex. at 138). The *Cantey Hanger* court also suggested that other examples of such conduct include the fact pattern in *Essex Crane Rental Corp. v. Carter* and a situation in which an attorney commits physical assault during trial. *See id*. (citing *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied), and giving an example from *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).

The high court disapproved of cases in which a court concluded that attorneys still are subject to liability to opposing parties based on fraud committed by the attorneys in the course of representing their clients. *See id*. at 483–84. The *Cantey Hanger* court generally approved of a line of cases exemplified by the *Alpert* case. *See id*. at 483–84. The high court indicated that (1) an attorney's knowing commission of a fraudulent act "outside the scope of his legal representation of the client" is actionable; and (2) an attorney's participation in "independently fraudulent activities" is considered "foreign to the duties of an attorney" and is not shielded from liability. *See id*. at 483–85. The *Cantey Hanger* court stated that fraud is not an exception to attorney immunity but that the immunity defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of the attorney's client, just as it does not extend to other wrongful conduct outside the scope of representation. *See id*. at 483–84. The high court concluded that an attorney who pleads the affirmative defense of attorney immunity has the burden to prove that the attorney's alleged wrongful conduct, even if it is alleged to be fraudulent, is part of the discharge of the attorney's duties to the client. *See id*. at 484.

The *Cantey Hanger* court disagreed with the court of appeals's conclusion

7

that intentional misrepresentations made by an attorney for the purpose of conferring a benefit on the attorney's client are outside the scope of the attorney's duties to the client. *See id*. at 485. The high court indicated that an attorney's conduct may be fraudulent but still fall within the scope of the attorney's representation of the client. *See id*. The *Cantey Hanger* court held that the law firm was entitled to summary judgment on its defense of attorney immunity because the law firm conclusively established that its allegedly fraudulent conduct was within the scope of its representation of a client in divorce proceedings and was not foreign to the duties of an attorney. *See id*.

In part of the *Cantey Hanger* opinion, the court appears to say that a defendant asserting attorney immunity in a litigation context need only conclusively prove that the allegedly actionable conduct, even if it is alleged to be fraudulent, was part of the discharge of the attorney's duties to the client in the litigation context. *See id*. at 483–84. Given the high court's conclusion that an attorney's fraudulent misrepresentations still may fall within the scope of the attorney's representation of the client, if this were the only requirement for attorney immunity, then an attorney would enjoy complete immunity from civil liability for all conduct committed during the representation of a client in litigation, even if the conduct is fraudulent (hereinafter "Complete Immunity Rule"). *See id*. at 483–85.

Another part of the *Cantey Hanger* opinion appears to say that a defendant asserting attorney immunity in a litigation context must prove conclusively that (1) the allegedly actionable conduct, even if it is alleged to be fraudulent, was part of the discharge of the attorney's duties to the client in the litigation context; and (2) the allegedly actionable conduct was not "foreign to the duties of an attorney" (hereinafter "Partial Immunity Rule"). *See id*. at 485. Under this rule, an attorney would be immune from civil liability for fraudulent conduct committed by the

attorney while representing a client in litigation if the fraudulent conduct was not "foreign to the duties of an attorney" but, the attorney would not be immune from civil liability for fraudulent conduct that was "foreign to the duties of an attorney." *See id*. To apply the Partial Immunity Rule, courts would need to distinguish between conduct "foreign to the duties of an attorney" and conduct not foreign to these duties. Yet, in the *Cantey Hanger* opinion, the supreme court does not articulate a legal standard for making this determination. *See id*. at 482–85. Two possible standards that could be used are (1) whether the conduct falls within the three examples of conduct "foreign to the duties of an attorney" apparently provided by the *Cantey Hanger* court or (2) whether the alleged conduct is fraudulent conduct based on an "independent duty" to the claimant together with justifiable reliance on the attorney's alleged representation or act, which is a standard applied by the *Alpert* court. *See id*. at 482; *Alpert*, 178 S.W.3d at 408.

U.S. Bank alleges Sheena's actions in disbursing settlement funds obtained from an insurance company constitute a fraudulent transfer, conversion, tortious interference with contract, and conspiracy. The alleged conduct is that Sheena placed settlement funds into his trust account and then disbursed the funds at his client's direction, but without considering a third party's alleged interest in the funds. Sheena disbursed settlement funds to himself, as part of his earned attorney's fee, and Sheena disbursed the remainder of the settlement funds in accordance with the dictates of his client. Under the *Cantey Hanger* case, the summary-judgment evidence conclusively proves that Sheena's allegedly actionable conduct was part of Sheena's discharge of his duties to his client in the litigation context. *See Cantey Hanger, LLP*, 467 S.W.3d at 484–86. Thus, if the Complete Immunity Rule applies, then the summary-judgment evidence conclusively proves that Sheena is entitled to judgment as a matter of law as to all of U.S. Bank's claims based on the attorney-immunity defense. *See id*.

9

Under the Partial Immunity Rule, this court also would have to determine whether the allegedly actionable conduct was "foreign to the duties of an attorney." *See id*. at 485. The three examples of such conduct provided by the *Cantey Hanger* court appear to be: (1) participation in a fraudulent business scheme with a client outside the litigation context, (2) the fact pattern in *Essex Crane Rental Corp. v. Carter*—allegedly drafting and filing fraudulent legal documents in a non-litigation context, for the purpose of conspiring to hide the client's assets from judgment creditors in violation of the Uniform Fraudulent Transfer Act and (3) a physical assault committed by the attorney during trial. *See id*. at 482; *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Under the *Cantey Hanger* case, the summary-judgment evidence conclusively proved that Sheena's allegedly actionable conduct does not fall within any of these three categories. *See Cantey Hanger, LLP*, 467 S.W.3d at 482–85. When the *Alpert* court spoke of an independent duty owed by the claimant to the attorney, it does not appear that the *Alpert* court intended to include in this category a duty by the attorney not to engage in fraudulent misrepresentation or a fraudulent transfer in the litigation context. *See Alpert*, 178 S.W.3d at 405–08. Therefore, to the extent the *Cantey Hanger* court meant to incorporate the *Alpert* legal standard for conduct "foreign to the duties of an attorney," the summary-judgment evidence conclusively proved that Sheena's allegedly actionable conduct is not "foreign to the duties of an attorney" under this standard. *See id*. at 482–486; *Alpert*, 178 S.W.3d at 408. Thus, we conclude that, if the Partial Immunity Rule applies, Sheena conclusively proves that (1) all of the allegedly actionable conduct was part of the discharge of Sheena's duties to his client in the litigation context; and (2) none of the allegedly actionable conduct was "foreign to the duties of an attorney." *See Cantey Hanger, LLP*, 467 S.W.3d at 482–86.

Under *Cantey Hanger*, whether the Complete Immunity Rule applies or the Partial Immunity Rule applies, the summary-judgment evidence conclusively proves that Sheena is entitled to judgment as a matter of law as to all of U.S. Bank's claims based on the attorney-immunity defense. *See id*. Accordingly, we overrule U.S. Bank's appellate issues and affirm the trial court's judgment.

/s/     Kem Thompson Frost
        Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.