Justice Lehrmann delivered the opinion of the Court.
*678 This case involves tort claims brought by a nonclient against an attorney, based in part on statements the attorney made in open court on behalf of his clients. We must determine whether the attorney is entitled to the claims' dismissal under the Texas Citizens Participation Act (TCPA or Act). The court of appeals held that the Act applies to the claims against the attorney but denied his motion to dismiss. We agree that the Act applies, but we hold that the attorney is entitled to dismissal and therefore reverse the court of appeals' judgment.
I. BACKGROUND
This suit stems from a legal dispute over title to 45 acres of a 285-acre tract of land in Brazos County (the Property Suit). Buetta Scott and her daughter Rajena (the Scotts) filed the Property Suit seeking a declaratory judgment that they were the rightful owners of the property because they had paid all taxes on it. Petitioner Bill Youngkin was, and still is, their attorney. Respondent Billy Hines, a defendant in the Property Suit, asserted that he had paid at least part of the taxes on the 45-acre subsection and therefore had an ownership interest in it. To greatly simplify a complicated history, both the Scotts and Hines claim to be descendants of Alex Scott, a prior owner of the disputed property. The Scotts sought a declaration of ownership to the exclusion of the hundreds of other living Alex Scott heirs. Hines, one of those other living heirs, resisted their attempt.
During trial, at which the Scotts were not present, Youngkin negotiated a settlement agreement with Hines's attorney. Youngkin then recited the terms of the agreement into the record pursuant to Texas Rule of Civil Procedure 11.[1] He announced to the court that Hines would "convey [to the Scotts] his undivided interest in the surface estate of the 285 acres but ... retain his mineral interests in that same property." In return, Youngkin stated his clients would convey to Hines the undivided one-half interest in the 45-acre subsection they would obtain through this agreement "so that the Alex Scott heirs would have 100 percent ownership in that 45-acre [subsection]." Hines then testified to his understanding of the agreement through responses to questions from his lawyer. Hines's affirmative answers showed it was his belief that he would convey his surface interest in the 285-acre tract to the Scotts and that the Scotts would convey "[fifty] percent of their interest in the [45-acre subsection] back to the heirs of Alex Scott." At that time, he said he believed, he and his fellow Alex Scott heirs would own 100 percent of the 45-acre subsection. Hines's attorney later formalized the agreement in a letter, which Hines, Hines's attorney, and Youngkin all signed (the Scotts did not).
Hines conveyed his surface interest in the 285-acre tract to the Scotts, who recorded the deed. Hines alleges that the Scotts, with Youngkin's assistance, then deeded their interest in the 45-acre subsection to Curtis Capps, also a client of Youngkin's, as "trustee." Capps then conveyed to Hines a partial interest in the 45-acre subsection-less than the full ownership interest that Hines apparently expected *679 to receive pursuant to the agreement. Hines also claims that Capps, represented by Youngkin, sought a declaratory judgment that Capps personally owned the portion of the 45-acre subsection that he had not transferred to Hines.
Hines sued the Scotts and Capps for common-law fraud and statutory fraud under Texas Business and Commerce Code chapter 27, alleging they had conspired to make misrepresentations and inducements to fraudulently deprive him of real property. Specifically, Hines alleges that the Scotts used the Rule 11 agreement to obtain his interest in the contested property with no intention of complying with their own obligations under the agreement. Hines alleges that the Scotts then coordinated with Capps to accomplish their noncompliance. He also asserted a claim against the Scotts for materially breaching the settlement agreement. Hines later added Youngkin as a defendant, claiming that he knowingly participated in the fraudulent scheme to deprive Hines of his property. In essence, Hines alleges Youngkin did the following: (1) entered the Rule 11 agreement on the Scotts' behalf knowing they had no intention to comply; (2) helped the Scotts avoid compliance with the agreement by preparing the deed used to transfer their property interest to Capps; and (3) aided Capps in his efforts to wrongfully assert ownership over a portion of the property by filing the relevant lawsuit.
Youngkin moved to dismiss the claims against him under the TCPA. In a supporting memorandum, he argued that his reciting the Rule 11 agreement into the court record constituted the exercise of the right to petition, as defined in the Act, and served as a factual basis for Hines's fraud and conspiracy claims against him. Youngkin also raised the affirmative defense of attorney immunity, arguing it shielded him from liability to a nonclient for actions taken in the course of representing a client.[2] The trial court denied the motion to dismiss, and Youngkin filed an interlocutory appeal pursuant to Civil Practice and Remedies Code sections 27.008(b) and 51.014(a)(12). The court of appeals affirmed, holding that (1) the TCPA applied to the claims against Youngkin, (2) Hines made a prima facie case for each element of his claims, and (3) Youngkin failed to prove his attorney-immunity defense. We granted Youngkin's petition for review.
II. DISCUSSION
"The [TCPA] protects citizens who [associate,] petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." In re Lipsky , 460 S.W.3d 579, 584 (Tex. 2015). That protection comes in the form of a special motion to dismiss, subject to expedited review, for "any suit that appears to stifle the defendant's" exercise of those rights. Id. Reviewing a TCPA motion to dismiss requires a three-step analysis. As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the moving party meets that burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. Id. § 27.005(c). If the nonmoving party satisfies that requirement, *680 the burden finally shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence. Id. § 27.005(d).
A. The TCPA's Applicability
We begin our inquiry with the threshold question of whether the Act applies to the case before us. We review issues of statutory interpretation de novo. City of San Antonio v. City of Boerne , 111 S.W.3d 22, 25 (Tex. 2003). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." Id. ; see also TEX. GOV'T CODE § 312.005. The "surest guide to what lawmakers intended" is the enacted language of a statute, Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 463 (Tex. 2009) (citation and internal quotation marks omitted), which necessarily includes any enacted statements of policy or purpose, see, e.g. , Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n , 518 S.W.3d 318, 329 (Tex. 2017) ; Greater Hous. P'ship v. Paxton , 468 S.W.3d 51, 62 (Tex. 2015). Moreover, legislative intent derives from an act as a whole rather than from isolated portions of it. City of San Antonio , 111 S.W.3d at 25. "[W]e construe [a] statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) (citations omitted).
A party may invoke the TCPA dismissal procedure if that party shows by a preponderance of the evidence that the legal action against it "is based on, relates to, or is in response to" the party's exercise of the right to speak, petition, or associate. TEX. CIV. PRAC. & REM. CODE § 27.003(a). The statute defines what it means to exercise those rights. Pertinent here, the "exercise of the right to petition" includes "a communication in or pertaining to ... a judicial proceeding." Id. § 27.001(4)(A). A "communication" is broadly defined as "the making or submitting of a statement or document in any form or medium." Id. § 27.001(1).
Relying on the expansive statutory definition of the "exercise of the right to petition," Youngkin argues that the TCPA applies here because Hines's claims stem from Youngkin's reciting the Rule 11 agreement in open court. Entering the agreement in the record, he continues, was a communication or statement made in a judicial proceeding, which constitutes the exercise of the right to petition as expressly defined in the statute. Hines responds that an attorney speaking for a client in a courtroom is not exercising any personal First Amendment rights at all. For that reason, Hines argues, his suit against Youngkin is outside the TCPA's purview.
Courts must adhere to legislative definitions of terms when they are supplied. TEX. GOV'T CODE § 311.011(b) ; see also TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) ("If a statute ... assigns a particular meaning to a term, we are bound by the statutory usage."). Substituting the statutory definitions for the defined terms, we see that the TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding. Youngkin's alleged liability stems from his dictation of the Rule 11 agreement into the court record during trial. By any common understanding of the words, he made a statement in a judicial proceeding.
While those isolated provisions appear to resolve whether Youngkin may avail himself of the Act, it would be contrary to our rules of interpretation to end our inquiry here. It is by now axiomatic that we must construe individual words *681 and provisions in the context of the statute as a whole. See, e.g. , El Paso Healthcare Sys. v. Murphy , 518 S.W.3d 412, 418 (Tex. 2017) ; Black v. Am. Bankers Ins. Co. , 478 S.W.2d 434, 437 (Tex. 1972) ; Lufkin v. City of Galveston , 63 Tex. 437, 439 (Tex. 1885). The text of the TCPA itself explicitly acknowledges that the Act is intended to safeguard the constitutional rights of speech, petition, and association (without foreclosing the ability to bring meritorious lawsuits). TEX. CIV. PRAC. & REM. CODE § 27.002. We see no conflict between the plain meaning of the definition of the exercise of the right to petition and the statute's express purpose. Therefore, the TCPA's protections properly apply to Hines's claims against Youngkin.
Hines's argument that Youngkin cannot invoke the TCPA because the First Amendment right to petition does not encompass Youngkin's in-court statements attempts to add a requirement to the statute that does not exist in its text. It does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should only apply to constitutionally guaranteed activities. Because the Legislature explicitly defined the term "exercise of the right to petition," injecting such a requirement into the TCPA would be disloyal to its enacted text. Whether that definition maps perfectly onto the external constitutional rights it aims to protect is irrelevant; we are bound by the statutory definition for the purposes of the TCPA. Importantly, we do not opine on whether an attorney has a constitutional right to petition that encompasses speaking on behalf of a client.
Accordingly, we hold that the TCPA applies to Hines's claims against Youngkin. We next turn to whether Youngkin is entitled to dismissal.
B. Youngkin's Entitlement to Dismissal
Because the TCPA applies, the burden shifted to Hines to establish by clear and specific evidence a prima facie case for each essential element of his claims. Id. § 27.005(c). If he did so, Youngkin is still entitled to dismissal if he proves the essential elements of any valid defenses by a preponderance of the evidence. Id. § 27.005(d). Assuming without deciding that Hines met his burden, we nevertheless hold that Youngkin is entitled to dismissal because he established the affirmative defense of attorney immunity.
Our recent opinion in Cantey Hanger, LLP v. Byrd , which issued after the court of appeals' opinion in this case, controls our analysis of attorney immunity. 467 S.W.3d 477 (Tex. 2015). In Cantey Hanger , we explained that an attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients. Id. at 481. Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer. See id. at 482. We also clarified in Cantey Hanger that the above inquiry correctly focuses on the kind of conduct at issue rather than the alleged wrongfulness of said conduct. Id. at 483. That is, a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful. See ids="6854054" index="23" url="https://cite.case.law/sw3d/467/477/">id.
Cantey Hanger usefully illustrates the scope-of-representation standard. In that case, a party in a divorce proceeding sued the opposing law firm for its role in executing a bill of sale on behalf of its client. See ids="6854054" index="24" url="https://cite.case.law/sw3d/467/477/">id. at 479. The firm's client was awarded ownership of an airplane in a divorce decree, which also stipulated that the client would pay certain taxes on said airplane. See ids="6854054" index="25" url="https://cite.case.law/sw3d/467/477/">id. The firm then executed a bill *682 of sale on behalf of its client in a way that allegedly shifted the tax burden to the other spouse. See id. Despite the allegation that the firm assisted its client in defying the terms of the decree, we held that the other spouse could not hold the firm liable for this conduct. See ids="6854054" index="27" url="https://cite.case.law/sw3d/467/477/">id. at 485. That the plaintiff characterized the firm's conduct as fraudulent or otherwise wrongful was immaterial to our evaluation of the immunity defense. Rather, the firm was shielded by attorney immunity because preparing documents ancillary to the divorce decree, even in a manner that allegedly violated the decree, was within the scope of representation relating to execution of the decree and was not foreign to the duties of a lawyer. See ids="6854054" index="28" url="https://cite.case.law/sw3d/467/477/">id. We also cited approvingly a court of appeals opinion that denied claims against an attorney by a nonclient based on "acts taken and communications made to facilitate the rendition of legal services to [the client]." Id. at 484 (alteration in original) (citing Alpert v. Crain, Caton & James, P.C. , 178 S.W.3d 398, 405 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) ). In that case, the complained-of actions included filing lawsuits and pleadings, providing legal advice, and being aware of settlement negotiations. Id.
In light of Cantey Hanger , we must look beyond Hines's characterizations of activity as fraudulent and conspiratorial and focus on the conduct at issue. See ids="9002109" index="32" url="https://cite.case.law/sw3d/178/398/#p405">id. Hines complains of Youngkin's negotiation and entry of the Rule 11 agreement, preparation of a land deed to facilitate a property transfer between his clients, and institution of a lawsuit regarding property ownership. The cases cited above illustrate that Youngkin's conduct was directly within the scope of his representation of his clients, regardless of any disagreement over the substance of the settlement agreement.
The policy behind the attorney-immunity doctrine also applies forcefully to Youngkin's case. The defense exists to promote "loyal, faithful, and aggressive representation" by attorneys, which it achieves, essentially, by removing the fear of personal liability. Id. at 481. Hines's suit against Youngkin is in direct tension with that rationale, as he seeks to hold Youngkin liable for pursuing his clients' legal interests. At bottom, the disagreement between the parties centers on the substance of the agreement. Hines's fraud and conspiracy claims are premised on his understanding of the Rule 11 agreement-that he would receive complete ownership of the 45-acre subsection-being the correct one, but Youngkin and his clients do not concede to that interpretation. And, regardless of the intent underlying the parties' settlement, Youngkin's complained-of actions were part of his responsibility to his clients, even if done improperly. It would strain the very existence of settlement agreements if a party could hold an opposing attorney liable for subsequently taking an action or position at odds with that party's understanding of the agreement. Even more concerning is that such a practice could impute a guarantee of the client's performance onto the attorney merely because he played a role in negotiating his client's agreement.
This is not to say that an attorney could not be held liable to his own client for misconduct similar to that alleged by Hines or be reprimanded for ethics violations. But to be held liable to the opposing party is a wholly different matter. This is also not to say that attorneys are insulated from all liability to nonclients for all wrongdoing in the name of a client. Though attorney immunity is broad, it is not limitless. In Cantey Hanger , we identified several nonexhaustive examples of conduct that may fall outside the reach of the attorney-immunity defense-participation in a fraudulent business scheme with a client, knowingly helping a client *683 with a fraudulent transfer to avoid paying a judgment, theft of goods or services on a client's behalf, and assaulting opposing counsel during trial. Id. at 482-83. Thus, while we recognize that some fraudulent conduct, even if done on behalf of a client, may be actionable, Hines does not allege any such behavior.[3]
Hines alternatively challenges the sufficiency of Youngkin's motion to dismiss, arguing that he did not present enough evidence to establish the defense by the requisite standard. Both the TCPA and Cantey Hanger are clear that the burden to prove the attorney-immunity defense is on Youngkin. See TEX. CIV. PRAC. & REM. CODE § 27.005(d) ; Cantey Hanger , 467 S.W.3d at 484. In the trial court, Youngkin filed a motion to dismiss that said simply "NOW COMES Defendant Bill Youngkin and moves the Court to dismiss the claims against him pursuant to the Texas 'Anti-SLAPP Statute,' i.e. , Tex. Civ. Prac. & Rem. Code § 27.003." He did not attach any evidence or arguments to that motion, but he filed a supporting memorandum two days later that contained legal argumentation in support of the attorney-immunity defense. Hines contends that Youngkin cannot have met his statutory burden because he submitted no evidence. We disagree.
The only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney-client relationship at the time. A court would then decide the legal question of whether said conduct was within the scope of representation. Here, the necessary facts are not in dispute. Hines's own allegations set out the conduct at issue, and his briefs presuppose that Youngkin was the Scotts' and Capps's attorney. Moreover, Youngkin's legal argument in his supporting memorandum is premised on those same facts; he argued that he was immune because he undertook the cited actions in the course of representing his clients. Though it would have been better practice for Youngkin to have submitted an affidavit attesting to those necessary facts, it does not prevent him from proving his defense under the circumstances of this case.
C. Attorney's Fees and Sanctions
Under the TCPA, a defendant who successfully moves for dismissal is entitled to "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require" and "(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a). Youngkin requests that we render judgment awarding him attorney's fees of $17,290 and remand the case to the trial court for an award of sanctions. We decline to render judgment in any amount in the first instance. Rather, we remand the case to the trial court for reconsideration of an award under section 27.009(a) in light of our determination that the claims against Youngkin must be dismissed.
III. CONCLUSION
We hold that Youngkin is entitled to dismissal under the TCPA. Under its plain meaning, the Act applies to protect an attorney's in-court statements on behalf of his client during a judicial proceeding. And, assuming without deciding that Hines carried his burden to make a prima facie case as to the elements of his claims against Youngkin, Youngkin is nevertheless entitled to dismissal under the affirmative *684 defense of attorney immunity. The conduct Hines complains of-negotiating and entering a settlement agreement, preparing transfer documents, and filing a lawsuit-falls within the scope of Youngkin's representation of the Scotts and Capps and is not foreign to the duties of a lawyer. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Rule 11 provides that an agreement between parties to litigation will be enforced if it is "in writing, signed and filed with the papers as part of the record" or "made in open court and entered of record." Tex. R. Civ. P. 11. Agreements entered pursuant to this rule are often called Rule 11 agreements for short.

Youngkin referred in his briefs to litigation privilege rather than attorney immunity, but both labels describe the same doctrine. See Troice v. Proskauer Rose, L.L.P. , 816 F.3d 341, 346-47 (5th Cir. 2016) ; Sacks v. Hall , No. 01-13-00531-CV, 2014 WL 6602460, at *11 (Tex. App.-Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.). Our recent precedent describes the doctrine as attorney immunity. Cantey Hanger, LLP v. Byrd , 467 S.W.3d 477passim (Tex. 2015).

Whether an attorney may be liable to nonclients for conduct engaged in to benefit the lawyer personally, as opposed to the client, is outside the scope of our opinion today.