**Affirmed and Opinion filed May 17, 2018.**



In the

# Fourteenth Court of Appeals

## NO. 14-17-00215-CV

## DAVID SHELLER, Appellant

v.

## CORRAL TRAN SINGH, LLP, SUSAN TRAN, and BRENDON SINGH, Appellees

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-01407**

## O P I N I O N

Appellant David Sheller appeals from the trial court's granting summary judgment in favor of appellees Corral Tran Singh, LLP (CTS), Susan Tran, and Brendon Singh (collectively, CTS Defendants) on Sheller's claims for violations of the Texas Deceptive Trade Practices Act (DTPA) and negligent misrepresentation. Sheller also appeals from the trial court's denying summary judgment in Sheller's favor on his claims. Sheller further challenges the trial court's failure to require CTS Defendants

to admit requests for admission or to strike CTS Defendants' pleadings under Texas Rule of Civil Procedure 215.4. Concluding that the trial court could properly grant summary judgment on CTS Defendants' attorney-immunity defense, and that the trial court did not abuse its discretion by refusing to impose sanctions on CTS Defendants, we affirm.

## I. BACKGROUND

New Millennium Management, L.L.C., operated a commercial building in Houston, Texas. In September 2013, New Millennium filed a voluntary petition under chapter 11 of the Bankruptcy Code. New Millennium as the debtor-in-possession was initially represented by Margaret McClure, as approved by the bankruptcy court in October 2013.

On January 5, 2014, New Millennium—named as the client—signed a fee agreement with CTS. Sheller signed the fee agreement as the sole member of New Millennium. New Millennium filed an application to employ CTS as a substitute for McClure, which the bankruptcy court approved on January 13, 2014.

At the time, New Millennium creditor TexHou Investment Group, Ltd., had on file a motion to appoint a chapter 11 trustee or to convert the case to a chapter 7 bankruptcy case. The hearing on the motion took place on January 22 and 30, 2014. CTS handled the hearing. On February 25, 2014, the bankruptcy court denied TexHou's motion to convert but agreed to appoint a trustee to oversee the estate of New Millennium. The trustee was appointed on February 28, 2014. This order ended the engagement of CTS for New Millennium, which was no longer a debtor-in-possession. Upon the motion of the chapter 11 trustee and TexHou, the case was converted to a chapter 7 case in June 2014.

In May 2014, CTS filed an amended final application for approval of

compensation for services rendered and reimbursement of expenses incurred as chapter 11 bankruptcy counsel for debtor New Millennium for the time period of January 5, 2014, to February 25, 2014. There was no objection to CTS's application. The bankruptcy court held a hearing and in August 2014 concluded that CTS should be allowed a fee of $3,880.

The bankruptcy case was dismissed in October 2015. In January 2016, Sheller filed suit against CTS Defendants for DTPA violations and "negligence and legal malpractice." Sheller amended his petition to remove the negligence and malpractice claims and to add claims for negligent misrepresentation.

Sheller alleged that CTS Defendants: did not prepare witnesses and improperly conducted direct examinations; did not research and incorrectly advised Sheller there could be no appeal from the appointment of the chapter 11 trustee; did not timely put together an exclusive plan; did not list expert witnesses and exhibits; did not spend adequate time on monthly operating reports; and did not adequately and timely confer with Sheller or return phone calls.

With regard to the DTPA, Sheller alleged that Tran violated section 17.50(2) by violating an express warranty and making a false statement, and that CTS Defendants violated "section 17.46 et seq." because their "services and ability were represented to be competent and they were of a different standard, quality or character." Sheller alleged that CTS Defendants' "repeated failures to list experts, exhibits, perform diligent research or even any research before making statements, and the refusal to put together an exclusive plan before the time expired to do so" violated section 17.50(3) of the DTPA. Sheller also pleaded "negligent misrepresentation as to all statements by [CTS Defendants] in representing New Millennium."

In April 2016, CTS Defendants removed the case to the United States District Court for the Southern District of Texas. The case was remanded in July 2016.

3

The parties filed cross-motions for summary judgment. CTS Defendants filed a motion for summary judgment based on the affirmative defenses of res judicata and attorney immunity.[1] Sheller filed a response[2] and a supplemental response.[3] Sheller

---

[1] CTS Defendants attached:

- the bankruptcy court's February 25, 2014 memorandum opinion;
- the bankruptcy court's August 18, 2014 memorandum opinion;
- the engagement letter and fee agreement dated January 4, 2014, between CTS and New Millennium;
- New Millennium's January 6, 2014 application to employ CTS as the debtor's attorneys;
- the bankruptcy court's January 13, 2014 order authorizing CTS to serve as New Millennium's counsel with Tran as attorney in charge;
- the bankruptcy schedules filed September 23, 2013;
- CTS's amended final application for approval of fees as chapter 11 counsel filed May 15, 2014;
- the docket in the bankruptcy case; and
- an affidavit by Richard Wilson, counsel for CTS Defendants, signed July 5, 2016.

[2] Sheller attached:

- CTS's original final application and amended final application for approval of fees as chapter 11 counsel filed March 28 and May 15, 2014, respectively;
- CTS's amended final application for approval of fees as chapter 11 counsel filed May 19, 2014;
- an email dated January 7, 2014, from Tran to Sheller;
- a New Millennium bank statement dated October 31, 2013;
- an email dated January 10, 2014, from Sheller to Tran and McClure;
- an affidavit in support of the denial of summary judgment by Sheller; and
- the chapter 7 trustee's emergency motion to sell real property dated July 29, 2014, with proposed order authorizing sale.

[3] Sheller attached:

- an affidavit by Robert Moon signed August 9, 2016;
- an affidavit by David Littwitz signed March 3, 2014;
- transcript excerpts of Moon's, Littwitz's, and Michael Lane's testimony during

4

filed a motion for summary judgment, arguing that there were no material issues of fact on his DTPA and negligent-misrepresentation claims.[4]  CTS Defendants responded.[5]  Sheller replied.[6]

Sheller filed and amended a motion for sanctions and default judgment.  Sheller then filed a "supplemental motion for sanctions and default judgment for aggravated perjury pursuant to Penal Code art. 37.02 et seq."[7]  The trial court granted CTS Defendants' summary-judgment motion and denied Sheller's.  Sheller filed a motion for new trial.  The trial court denied his motion.  Sheller timely appealed.

## II.  ANALYSIS

### A. Standard of review

We review summary judgments de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  A plaintiff moving for traditional summary judgment must conclusively establish all essential elements of its claim.  *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP,*

---

the January 22, 2014 hearing in bankruptcy court;

- an email dated February 27, 2014, from Tran to Sheller, forwarding an email from the chapter 11 trustee;

- an email dated January 7, 2014, from Tran to Sheller; and

- Sheller's supplemental affidavit in response to CTS Defendants' summary-judgment motion.

[4] Sheller referenced multiple exhibits as attached to his summary-judgment motion, but the record on appeal does not contain them.  Sheller stated that he did not reattach these exhibits to his amended summary-judgment motion.  The referenced documents all appear to be otherwise included in the record as exhibits to Sheller's filings related to CTS Defendants' summary-judgment motion.

[5] CTS Defendants attached the bankruptcy court's June 2, 2014 memorandum opinion.

[6] Sheller attached an affidavit by Dale Zuehls dated July 14, 2016; an email from Sheller to Tran and McClure dated January 10, 2014; and an email from Tran to Sheller and McClure dated January 10, 2014.

[7] At the sanctions hearing, the trial court explained that it could not prosecute CTS Defendants for perjury and that Sheller would have to "refer it to the DA's office."

5

*Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)); *see* Tex. R. Civ. P. 166a(c). Traditional summary judgment for a defendant is proper when it (1) negates at least one element of each of the plaintiff's claims or (2) establishes all elements of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Cullins*, 171 S.W.3d at 530 (citing *Sci. Spectrum, Inc. v Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *see* Tex. R. Civ. P. 166a(c).

Once the moving party establishes its right to a traditional summary judgment, the burden shifts to the nonmoving party to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam); *see Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmoving party and indulge every reasonable inference in the nonmoving party's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

"When, as in this case, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, this court may consider the propriety of the denial as well as the grant." *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 729 (Tex. App.—Houston [14th Dist.] 2003, no pet.). If the issue raised is based on undisputed and unambiguous facts, then we may determine the question presented as a matter of law. *Id.* (citing *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Id.* If, however, resolution of the issues rests on disputed facts, then summary judgment is inappropriate, and we should reverse and remand for further proceedings. *Id.*

When, as here, the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we affirm the judgment if any of the theories advanced in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). In other words, an appellant must show that each independent argument advanced in the motion is insufficient to support the summary judgment. *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 932 (Tex. App.—Houston [14th Dist.] 1994, no writ).

## B. Attorney-immunity defense

In his first issue, Sheller argues that the trial court erred in granting CTS Defendants' motion for summary judgment "when there were material issues of law and fact which all favored . . . Sheller." Because the trial court did not specify on which ground it granted CTS Defendants' motion, we consider whether any ground they asserted supports the summary judgment.

One of the grounds CTS Defendants advanced was attorney immunity. Attorney immunity is an affirmative defense that protects attorneys from liability to nonclients.[8] *Cantey Hanger*, 467 S.W.3d at 481 (citing *Sacks v. Zimmerman*, 401 S.W.3d 336, 339–40 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)). The purpose of the attorney-immunity defense is to ensure loyal, faithful, and aggressive advocacy to clients. *Id.* To be entitled to summary judgment, CTS Defendants must have proven that there was no genuine issue of material fact as to whether their conduct was protected by attorney immunity and that they were entitled to judgment as a matter of law. *See id.*

According to Sheller, the Texas Supreme Court's decision in *Cantey Hanger v.*

---

[8] There is no dispute that CTS Defendants' client was New Millennium, not Sheller individually.

*Byrd* does not apply to his case.  We disagree.

The Texas Supreme Court recently affirmed that *Cantey Hanger* controls our analysis of attorney immunity.  *Youngkin v. Hines*, —S.W.3d—, No. 16-0935, 2018 WL 1973661, at *4 (Tex. Apr. 27, 2018).  As the *Youngkin* Court stated:

> In *Cantey Hanger*, we explained that an attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients.  [467 S.W.3d] at 481.  Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer.  *See id.* at 482.  We also clarified in *Cantey Hanger* that the above inquiry correctly focuses on the kind of conduct at issue rather than the alleged wrongfulness of said conduct.  *Id.* at 483.  That is, a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful.  *See id.*

*Id.*  The Court explained that "*Cantey Hanger* usefully illustrates the scope-of-representation standard."  *Id.*  In *Cantey Hanger*:

> [A] party in a divorce proceeding sued the opposing law firm for its role in executing a bill of sale on behalf of its client.  *See* [467 S.W.3d] at 479.  The firm's client was awarded ownership of an airplane in a divorce decree, which also stipulated that the client would pay certain taxes on said airplane.  *See id.*  The firm then executed a bill of sale on behalf of its client in a way that allegedly shifted the tax burden to the other spouse.  *See id.*  Despite the allegation that the firm assisted its client in defying the terms of the decree, we held that the other spouse could not hold the firm liable for this conduct.  *See id.* at 485.  That the plaintiff characterized the firm's conduct as fraudulent or otherwise wrongful was immaterial to our evaluation of the immunity defense.  Rather, the firm was shielded by attorney immunity because preparing documents ancillary to the divorce decree, even in a manner that allegedly violated the decree, was within the scope of representation relating to execution of the decree and was not foreign to the duties of a lawyer.  *See id.*

*Id.*  "The only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney-client relationship at the time.  A court

8

would then decide the legal question of whether said conduct was within the scope of representation." *Id.* at \*6.

Therefore, "[i]n light of *Cantey Hanger*," we look beyond nonclient Sheller's characterizations of CTS Defendants' activity as DTPA violations and negligent misrepresentations and instead focus on the type of conduct at issue. *See id.* at \*5. Sheller complained about CTS Defendants' acts and communications in connection with listing or not listing certain witnesses as experts. Sheller alleged that CTS Defendants told him that "as principal of the debtor in possession [he] d[id] not have standing" to appeal the appointment of the chapter 11 trustee. Sheller also complained about CTS Defendants' "repeated failures" to prepare and properly examine witnesses, list exhibits, perform research, put together an exclusive plan, prepare monthly operating reports, and return phone calls to prepare reports or prepare for hearings.

Each of these challenged actions falls within the kind of activity that would be expected as part of the discharge of an attorney's duties in representing his client in a bankruptcy matter and, in particular, in the underlying proceeding. We conclude that CTS Defendants' conduct was directly within the scope of their representation of their client New Millennium as the debtor-in-possession in the context of the chapter 11 bankruptcy proceeding, regardless of whether such conduct was "meritorious." *See id.*; *Cantey Hanger*, 467 S.W.3d at 485 ("Meritorious or not, the *type* of conduct alleged falls squarely within the scope of Cantey Hanger's representation of Simenstad in the divorce proceedings." (emphasis in orig.)); *U.S. Bank Nat'l Ass'n v. Sheena*, 479 S.W.3d 475, 480 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Under the *Cantey Hanger* case, the summary-judgment evidence conclusively proves that Sheena's allegedly actionable conduct was part of Sheena's discharge of his duties to his client in the litigation context.").

Additionally, we conclude that none of the alleged conduct by CTS Defendants

9

was "foreign to the duties of an attorney." *See Youngkin*, 2018 WL 1973661, at \*4, 6; *Cantey Hanger*, 467 S.W.3d at 482–85. Our court has provided three examples of such conduct, as described by *Cantey Hanger*: (1) participating in a fraudulent business scheme with a client outside the litigation context, (2) drafting and filing fraudulent legal documents in a non-litigation context to hide the client's assets and evade a judgment, and (3) committing a physical assault during trial. *See U.S. Bank*, 479 S.W.3d at 480 (citing *Cantey Hanger*, 467 S.W.3d at 482, and *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). None of the conduct alleged by Sheller falls within any of these three categories. *See id.*

Both the Texas Supreme Court and our court have "cited approvingly" *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied), when considering the legal standard for conduct "foreign to the duties of an attorney." *See Youngkin*, 2018 WL 1973661, at \*4; *Cantey Hanger*, 467 S.W.3d at 483–84; *U.S. Bank*, 479 S.W.3d at 480. In *Alpert*, the First Court of Appeals explained: "If a lawyer participates in independent fraudulent activities, his action is 'foreign to the duties of an attorney.'" 178 S.W.3d at 406 (citation omitted). The *Alpert* court then considered whether certain actions such as filing lawsuits and pleadings, providing legal advice upon which the client acted, and awareness of settlement negotiations were "foreign to the duties of an attorney" and determined that they were not. *Id.* at 408. Accordingly, the *Alpert* court concluded that the trial court had not erred by dismissing claims against an attorney by a nonclient based on "acts taken and communications made to facilitate the rendition of legal services to" the client. *Id.*; *see Youngkin*, 2018 WL 1973661, at \*4; *Cantey Hanger*, 467 S.W.3d at 483–84.

Here, Sheller did not allege that CTS Defendants engaged in any "independently fraudulent activities." *See Alpert*, 178 S.W.3d at 406. Moreover, all of the challenged

10

conduct involved acts taken and communications made to facilitate the rendition of legal services to client New Millennium in the context of the bankruptcy proceeding. *See U.S. Bank*, 479 S.W.3d at 480; *Alpert*, 178 S.W.3d at 408. Therefore, CTS Defendants' actions were not "foreign to the duties of an attorney."

Nevertheless, Sheller argues that he "should have won and [CTS Defendants] should have lost on negligent misrepresentation." Sheller asserts that the trial court's decision to grant summary judgment on his negligent-misrepresentation claims runs contrary to *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999), which "allows suit against attorneys by nonclients for negligent misrepresentation." *See Cantey Hanger*, 467 S.W.3d at 483 n.7 ("In *McCamish*, we held that an attorney can be liable to a non-client for negligent misrepresentation where "an independent duty to the nonclient [arises] based on the [attorney's] manifest awareness of the nonclient's reliance on the misrepresentation and the [attorney's] intention that the nonclient so rely." (citing 991 S.W.2d at 792) (alterations in orig.)).

Even construed in the light most favorable to Sheller, the emails at issue allegedly containing negligent misrepresentations were client communications directed to New Millennium by way of Sheller wearing his "managing member of New Millennium" hat. The communication concerning lack of standing to appeal concerned Sheller "as principal of the debtor in possession" New Millennium, not individually. The communications relating to the witness list took place in the context of requesting documents and information from Sheller on New Millennium's behalf to use in defending the motion to convert.

Nothing within these communications indicates that CTS Defendants intended Sheller as an individual rely on the allegedly negligent misrepresentations or that CTS Defendants were manifestly aware of Sheller's reliance on such representations. Moreover, although Sheller claims that he relied on CTS Defendants' statements,

11

nothing indicates that his reliance was justifiable. Any communication to Sheller individually as a nonclient would have been directed to him as a creditor[9] of New Millennium. *See McCamish*, 991 S.W.2d at 794 ("Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context. . . . This adversary concept reflects the notion that an attorney, hired by a client for the benefit and protection of the client's interests, must pursue those interests with undivided loyalty (within the confines of the Texas Disciplinary Rules of Professional Conduct), without the imposition of a conflicting duty to a nonclient whose interests are adverse to the client." (citations omitted)); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9–11 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g) (rejecting appellants' argument that *McCamish* permitted their negligent-misrepresentation claim where appellants did not allege that their reliance was reasonable or justifiable and pleadings indicated "interests were not aligned and can most accurately be characterized as adverse"). We cannot conclude that any analysis under *McCamish* requires us to reverse the trial court's summary judgment with respect to Sheller's negligent-misrepresentation claims.

We conclude that CTS Defendants conclusively established that their conduct was protected by the doctrine of attorney immunity. Sheller did not otherwise raise a genuine issue of material fact. Therefore, the trial court did not err by granting summary judgment in favor of CTS Defendants on all of Sheller's claims. We overrule Sheller's first issue.[10]

---

[9] Sheller was one of New Millennium's largest creditors, with a $550,000 unsecured nonpriority claim for "business loans" in the bankruptcy.

[10] Because we have upheld the trial court's summary judgment on attorney immunity, we do not address Sheller's res judicata arguments. *See* Tex. R. App. P. 47.1; *Carr*, 776 S.W.2d at 569.

In his third issue, Sheller argues that the trial court erred as a matter of law in failing to grant his motion for summary judgment. Because we have decided the trial court properly could conclude that attorney immunity barred all of Sheller's claims, we likewise overrule his third issue.

## C. Refusal to sanction

In his second issue, Sheller challenges the trial court's refusal to require CTS Defendants to admit requests for admission or to strike CTS Defendants' pleadings under Texas Rule of Civil Procedure 215.4. Sheller contends that CTS Defendants "evasively and falsely answered" discovery with regard to their treatment of purported expert witnesses David Littwitz and Robert Moon. Sheller argues that he is entitled to reversal and reasonable attorney's fees on this basis. We disagree.

Rule 198.1 provides that a party may propound written requests for admissions. *See* Tex. R. Civ. P. 198.1. The responding party must timely provide a response that fairly meets the substance of the request. *See id.* 198.2. The party who has requested admissions may move the trial court to determine the sufficiency of an answer or objection. *See id.* 215.4(a). "[A]n evasive or incomplete answer may be treated as a failure to answer" and "[i]f the court determines that an answer does not comply with the requirements of Rule 198, it may order either that the matter is admitted or that an amended answer be served." *Id.* Under rule 215.4(b):

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under rule 198 and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney[']s fees.

*Id.* 215.4(b). The court must grant the order unless it finds that (1) the request for admission was held objectionable pursuant to rule 193, (2) the admission sought was

13

of no substantial importance, (3) the party failing to make the admission had a reasonable ground to believe he might prevail on the matter, or (4) there was other good reason for the failure to admit. *Id.*

We review a trial court's decision regarding sanctions under rule 215.4 for an abuse of discretion. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Perez v. Perez*, No. 13-11-00169-CV, 2013 WL 398932, at *14–15 (Tex. App.—Corpus Christi Jan. 31, 2013, no pet.) (mem. op.) (denial of motion for sanctions was not abuse of discretion (citing rules 198 and 215.4)). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 839.

In his written discovery, Sheller sought to have CTS Defendants admit that they failed to timely disclose experts for a bankruptcy hearing and that the experts and their exhibits were stricken. In their responses, CTS Defendants took the position that New Millennium told them there were no experts but to "keep pushing" like there were. CTS Defendants denied that they failed to timely list exhibits or experts or that exhibits or experts were ever stricken. At the sanctions hearing, the trial court indicated that it was "confused" by Sheller's motion: "They've answered your discovery. You're just saying that they answered them wrong." The trial court also stated that Sheller could use the emails and transcript excerpts on which he relied as "impeachment." In other words, in the trial court's view, the matter was disputed and CTS Defendants did not provide evasive or untruthful answers. On this record, we cannot conclude that the trial court abused its discretion in refusing to deem the matter admitted.[11]

In addition, to obtain reversal, Sheller would have to show that any error was reasonably calculated to cause and probably did cause rendition of an improper judgment or probably prevented him from properly presenting his case on appeal. *See*

---

[11] Nothing in the language of rule 215.4 provides for the sanction of striking pleadings.

14

Tex. R. App. P. 44.1(a); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). Sheller has not done so. We already have determined that CTS Defendants' conduct and communications relating to the exhibit list and exhibits—whether meritorious or not—fell within the scope of CTS Defendants' representation of New Millennium in the bankruptcy proceeding and were not "foreign to the duties of an attorney." Summary judgment here did not turn on the requested admissions. *See Gee*, 765 S.W.2d at 396.

We overrule Sheller's second issue.

### III.  CONCLUSION

Having overruled all of Sheller's issues, we affirm the trial court's judgment.


/s/    Marc W Brown
Justice


Panel consists of Justices Boyce, Jamison, and Brown.