**AFFIRMED and Opinion Filed May 15, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00732-CV**

**STAFF CARE, INC., A WHOLLY OWNED SUBSIDIARY OF AMN HEALTHCARE, INC., Appellant**

**V.**

**ESKRIDGE ENTERPRISES, LLC D/B/A ESKRIDGE AND ASSOCIATES, Appellee**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-17163**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Bridges

This is an interlocutory appeal from the trial court's order denying a motion to dismiss based on the Texas Citizen Participation Act (TCPA). TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. We conclude the TCPA does not apply to appellee Eskridge Enterprises, LLC d/b/a Eskridge and Associates's tortious interference and DTPA counterclaims against Staff Care, Inc., a wholly owned subsidiary of AMN Healthcare, Inc. We affirm the trial court's order denying the motion to dismiss.

## Background

Staff Care is a subsidiary staffing company of AMN Healthcare, Inc. that has a large supply of clinicians and physicians within its network. Eskridge is a "service-disabled Veteran-owned

small business" that places doctors on contract assignments nationwide under federal contracts (typically with the Veterans Administration).

Staff Care and Eskridge had a long-standing relationship in which Staff Care provided healthcare providers and Eskridge used them in its business. On December 22, 2008, the parties entered into a contract for locum tenens coverage (the Agreement) in which Staff Care provided Eskridge healthcare providers in accordance with an agreed upon fee schedule. The most recent contract extension occurred on May 1, 2017.

On or about May 1, 2017, Eskridge was awarded a lucrative government contract. Shortly thereafter, Staff Care pulled all the physicians from every active contract with Eskridge. According to Eskridge, Staff Care communicated with existing and prospective physicians in March, April, and May of 2017 and told them they were not permitted to leave or work with Eskridge directly. Staff Care further told Eskridge it would have to pay significant reassignment fees, which Eskridge considered "blackmail fees," if it worked directly with any physicians. Eskridge alleged that "[a]s a direct result of [Staff Care's] interference," Eskridge's government contract was cancelled.

Staff Care thereafter filed suit for breach of contract to recover $750,000 in damages for the services rendered under the Agreement that Eskridge failed to pay pursuant to the Contract. Eskridge answered and filed counterclaims for deceitful trade practices–false advertising, breach of contract, tortious interference, unfair competition, and economic duress.

Staff Care filed a motion to dismiss pursuant to the TCPA alleging that Eskridge's counterclaims were predicated on Staff Care's exercise of free speech and association. Specifically, Staff Care asserted the communications related to health or safety, community well-being, and a service in the marketplace, thereby triggering the protections of the TCPA as an exercise of its free speech. It also contended its alleged communications with physicians involved

a shared common interest to promote and pursue a business relationship regarding physician staffing thereby triggering protection under the TCPA as a right of association. Staff Care further argued the commercial speech exemption did not apply because its alleged wrongful conduct did not stem from services Staff Care was offering Eskridge, but instead involved communications from Staff Care to physician/clients. Staff Care insisted it met its burden establishing the applicability of the TCPA, and Eskridge, for various reasons, could not establish by clear and specific evidence every essential element of its counterclaims to survive a motion to dismiss.

Eskridge responded the TCPA did not apply or, alternatively, the commercial speech exemption applied. In conclusory fashion, Eskridge claimed it established by clear and specific evidence every essential element of its counterclaims.

The trial court held a hearing on April 11, 2018 and May 8, 2018. The court focused, in part, on whether the commercial speech exemption applied. Staff Care repeatedly emphasized the physicians were not clients, but were the "goods" they provided to hospitals. Eskridge responded Staff Care is in the business of selling or subcontracting services, Eskridge and the physicians are the consumers, and the staffing agreement is the transaction.

The trial court denied Staff Care's motion to dismiss on June 5, 2018. On appeal, Staff Care challenges the trial court's order denying dismissal of Eskridge's DTPA and tortious interference counterclaims.

**The TCPA**

The TCPA "protects citizens ... from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for

demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b).

"To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of [the] First Amendment Rights" protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, related to, or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Elliott*, 564 S.W.3d at 847. However, even if the non-movant satisfies this requirement, the trial court must still dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [non-movant's] claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also Youngkin*, 546 S.W.3d at 679–80.

**Standard of Review**

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 773 (Tex. App.—Dallas 2018, pet. denied). "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is

based." *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see also* TEX CIV. PRAC. & REM. CODE ANN. § 27.006(a).

Whether the TCPA applies to Eskridge's counterclaims is an issue of statutory interpretation that we also review de novo. *Youngkin*, 546 S.W.3d at 680. In conducting our analysis, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *Harper*, 562 S.W.3d at 1. We construe the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

We are required to consider both the specific statutory language at issue and the statute as a whole. *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see also Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an act as a whole rather than from isolated portions of it."). We endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *In re Office of Attorney Gen.*, 422 S.W.3d at 629. The supreme court has specifically directed us to adhere to the TCPA definitions supplied by the legislature. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018). However, in the process of applying those "isolated" definitions, we are required to construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680–81.

**Discussion**

As movant, Staff Care was required to show by a preponderance of the evidence that the TCPA applies to Eskridge's legal action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).[1] In its first issue, Staff Care asserts it met its burden of establishing Eskridge's counterclaims are based on, related to, or in response to Staff Care's exercise of its right of free speech or right of association. Each of these protected rights requires a "communication" as defined by the TCPA. Eskridge does not dispute a "communication," as defined by section 27.001(1), occurred. *Id.* § 27.001(1). Thus, we begin our analysis by considering whether Staff Care's communications were an "exercise of the right of free speech," defined as a "communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" includes "an issue related to" health or safety, community well-being, or a good, product, or service in the marketplace. *Id.* § 27.001(7)(A), (B), (E).[2]

As acknowledged by Staff Care in its opening brief, Eskridge's amended answer and counterclaims have made no small task of deciphering which factual allegations support each of its legal theories. For purposes of our analysis, we consider the alleged communications listed in a separate heading titled, "Communications by Plaintiff" in the amended answer and counterclaims and any relevant communications listed in its tortious interference and DTPA causes of actions. *See Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810, at *12 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (recognizing "unique language of the TCPA directs

---

[1] The parties do not dispute that Eskridge's counterclaims are "legal actions" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6).

[2] In a footnote, Staff Care asserts it may argue for the first time on appeal that the alleged communications are a "matter of public concern" related to "the government" because they involved government contracts with the VA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(C); *see Adams*, 547 S.W.3d at 897 (holding court of appeals imposed too strict of a view of error preservation and should have considered arguments based on community or environmental well-being under section 27.001(7)). In *Adams*, the supreme court was "not convinced that Adams failed to argue community and environmental well-being in the trial court" because he "expressly mentioned these concerns" at the dismissal hearing. *Adams*, 547 S.W.3d at 896. Here, neither Staff Care's motion to dismiss cited or argued the applicability of section 27.001(7)(C) nor did it make any such argument at the hearing on its motion to dismiss. Thus, we do not find *Adams* applicable to these facts and conclude Staff Care may not raise this argument for the first time on appeal.

–6–

courts to decide its applicability based on a holistic review of the pleadings"). Eskridge's amended answer and counterclaims states the following:

**Communications by Plaintiff**

61. Upon information and belief, prior to signing the Agreement, Plaintiff communicated to Defendant that it was not permitted to have an attorney review the contract.

62. During the entirety of the relationship between the parties Staff Care communicated to Eskridge that he would have to pay Reassignment Fees if a physician known to Staff Care worked for Eskridge directly.

63. After the initial obligation period ended in 2009 Staff Care communicated to Eskridge that he would need to extend the contract in order to keep physicians on active ongoing GOVCONs.

64. Beginning in 2013, when Eskridge changed its invoicing system, Staff Care increased its threats to pull their physicians off existing contracts if they were not invoiced. These threats continued until when Staff Care breached the contract in late 2017.

65. During the relationship between the parties, and significantly during the months of March, April, and May of 2017, Plaintiff communicated to existing and prospective physicians that they were not permitted to leave or work with Defendant directly.

66. Plaintiff's communication with existing physicians, prospective doctors, and Eskridge is a form of commercial advertising.

In its motion to dismiss, Staff Care argued these communications are a "matter of public concern" because they are based on communications allegedly made to physicians regarding physician staffing services offered by both parties.

To the extent Eskridge responds the communications were not made to the public at large and, therefore, do not involve a "matter of public concern," the "plain language of the statute imposes no requirement that the form of the communication be public." *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). In the absence of limiting language within the statutory definitions, "we must presume that the Legislature broadly included both public and private communications." *Id*.; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.011 (statute must

be "construed liberally to effectuate its purpose and intent fully"). We are unpersuaded by Eskridge's argument that the communications do not relate to matters of public concern because they "were only made to physicians" rather than to the public at large. Instead, we focus on whether the content of the communications falls within the statutory definition of "matter of public concern."

In *Dyer v. Medoc Health Services, LLC*, No. 05-18-00472-CV, 2019 WL 1090733 (Tex. App.—Dallas Mar. 8, 2019, no pet. h.), we recently concluded text messages discussing alleged tortious conduct are not tangentially related to a matter of public concern "simply because the proprietary and confidential information that was to be misappropriated belonged to a company in the healthcare industry." *Id*. at 6. Here, Eskridge similarly argues the communications at issue, although not involving proprietary or confidential information, are not matters of public concern simply because they involved physicians in the healthcare industry. It asserts, "The mere fact that Staff Care customers/clients are doctors does not automatically make communications to/with them matters of public concern." We agree with this general proposition; however, our analysis does not end here. We must look to the content of the communications themselves and not focus solely on the occupation of the speaker or the related industry. Further, the Texas Supreme Court has recently clarified that the TCPA neither requires the statements specifically "mention" health or safety nor have more than a "tangential relationship" to the same. *Coleman II*, 512 S.W.3d at 900. TCPA applicability "requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health [and] safety." *Id*.

We acknowledge authority concluding the provision of medical services by a healthcare professional and communications about a physician's competence are matters of public concern. *See, e.g., Lippincott*, 462 S.W.3d at 509–10 (communications about whether a nurse anesthetist properly provided medical services to patients was matter of public concern); *see also Batra v.*

*Covenant Health Sys.*, 562 S.W.3d 696, 708–10 (Tex. App.—Amarillo 2018, pet. filed) (communications relating to handling of cases, disciplinary actions, and medical competence were matters of public concern). However, none of the communications at issue here involve such implications. Instead, they involve statements about a business dispute, the subject of which involves physicians as part of the Agreement for locum tenens coverage. We cannot conclude under these facts that the communications at issue are in connection to an issue related to health and safety or community well-being, thereby making them a "matter of public concern."

For example, Staff Care allegedly telling Eskridge it would have to pay significant reassignment fees if it worked directly with physicians does not impact the physicians ability to continue providing health care to patients, which could conceivably impact "health and safety" or "community well-being" and be a "matter of public concern." Instead, it could affect Eskridge economically, which supports a conclusion the communication involves a business dispute. *See, e.g., Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.) (concluding communications made in connection with a business dispute were not matter of public concern under TCPA). Similarly, Staff Care telling existing and prospective physicians they were not permitted to leave Staff Care or work with Eskridge directly is not connected to an issue related to health and safety or community well-being because Staff Care was not impacting the physicians ability to provide health care, but instead potentially limiting Eskridge's business relationships. Thus, the relevant communications at issue make no mention of health or safety, and we cannot conclude they are "in connection with" any issues related to health or safety or community well-being.[3]

---

[3] Staff Care has not challenged on appeal Eskridge's breach of contract or economic duress counterclaims; therefore, communication numbers 61 (reviewing a contract), 63 (communicating need to extend contract), and 64 (threatening to pull physicians off existing contracts if they were not invoiced) are not pertinent to our inquiry. *Sloat v. Rathburn*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd) (noting that any activities that are not a factual predicate for claims are "simply not pertinent to the inquiry"). Communication number 66 (Staff Care engaging in commercial advertising) fails to identify the contents of the communication. Without such information, a court cannot determine whether the alleged communication falls under the statutory definitions of the TCPA. *See Bacharach v. Doe*, No. 14-14-00947-CV, 2016 WL 269958, at *2–3 (Tex. App.—Houston [14th Dist.] Jan. 21, 2016, no pet.) (mem. op.).

We must now consider whether the communications are "in connection with" any issues related to a service in the marketplace. We find the analysis in *I-10 Colony, Inc. v. Lee*, No. 01-14-00465-CV, 2015 WL 1869467, at *4-5 (Tex. App.—Houston [1st Dist.] Apr. 23, 2015, no pet.) (mem. op.) instructive. In that case, Lee filed suit alleging fraud against I-10's attorney based on the attorney's alleged representations to Lee that I-10 would pay Lee fifty percent of the income generated by the hotel as required by a prior judgment when I-10 had no intention of doing so. *Id.* at *1. I-10 filed a motion to dismiss pursuant to the TCPA arguing Lee's fraud claim was based on, related to, or in response to I-10's exercise of free speech because it was based on communications made by I-10's lawyer. *Id.* I-10 asserted lawyer's services are issues of public concern as a "service in the marketplace." *Id.* The trial court denied the motion to dismiss. On appeal, the court affirmed because Lee's fraud claim "[wa]s not based on communications about I-10's lawyer's services." *Id.* at *5. In reaching this conclusion the court stated, "Because the subject of this communication is not I-10's lawyer's services, the communication therefore was not one made in connection with a matter of public concern." *Id.*

Similarly, the communications supporting Eskridge's tortious interference claims (that Staff Care communicated with existing and prospective physicians that they were not permitted to leave or work with Eskridge and that Eskridge would have to pay significant reassignment fees if it worked directly with physicians) do not involve or relate to Staff Care's services in the marketplace. As such, the communications were not made in connection with a matter of public concern.

However, we cannot reach the same conclusion regarding Eskridge's DTPA claim. Eskridge claimed Staff Care "attempted by publication to induce" physicians in the market for services they both provided to hire Staff Care instead of Eskridge; "caused confusion as to the source of the physician services"; and "caused misunderstanding as to affiliation with Eskridge."

–10–

These communications relate to Staff Care's services in the marketplace and therefore are a matter of public concern as defined by the TCPA and implicate the "exercise of the right of free speech." Having reached this conclusion, we need not determine whether the DTPA counterclaim implicates the "exercise of the right of association." TEX. R. APP. P. 47. We must, however, determine if Eskridge's tortious interference counterclaim falls under the "exercise of the right of association."

The TCPA defines "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2). We recently concluded it would be "illogical" to apply the TCPA to private communications discussing an alleged conspiracy between parties that did not involve public or citizen participation. *See Dyer*, 2019 WL 1090733, at *5. Construing the statute such that the appellants would have a "right of association" based solely on private text messages "is an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation." *Id*. We are bound by our Court's recent precedent and therefore must likewise conclude the private communications between Staff Care encouraging physicians to work with it instead of Eskridge do not involve public or citizen participation furthering the purpose of the TCPA. *Id*. (acknowledging other courts of appeals have concluded the TCPA's protection of the right of association applies to claims for tortious interference but relying on our precedent in *Coleman I*, 464 S.W.3d at 848).[4] Accordingly, Staff Care failed to carry its initial burden to prove by a preponderance of the evidence that Eskridge's tortious interference counterclaim is a legal action based on, related to, or in response to its exercise

---

[4] In *Coleman I*, we concluded "it would be illogical for the [TCPA] to apply to situations in which there is no element of public participation." *Coleman I*, 464 S.W.3d at 847. In reversing *Coleman I*, the Texas Supreme Court "express[ed] no opinion on whether the challenged communications were made in the exercise of the right of association under the TCPA." 464 S.W.3d at 902. As such, *Coleman I* remains binding precedent on this Court. Staff Care cites *MVS International Corp. v. International Advertising Solutions, LLC*, 545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.) to support its right of association argument. However, the court in that case specifically declined to decide the breadth of associational rights. *Id*. at 194.

of the right of free speech or association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Thus, the TCPA does not apply to this counterclaim.

However, our analysis does not end here because we must consider whether the commercial speech exemption applies to Eskridge's DTPA counterclaim.

## Commercial Speech Exemption

A party can avoid the TCPA's burden-shifting requirements by showing that one of the exemptions applies. *See Santellana v. CentiMark Corp.*, 2019 WL 14422228, at *3 (Tex. App.—Houston [1st Dist.] April 2, 2019, no pet. h.) (mem. op.). The nonmovant bears the burden of proving a statutory exemption. *MacFarland v. Le-Vel Brands LLC*, No. 05-16-00672-CV, 2017 WL 1089684, at *6 (Tex. App.—Dallas Mar. 23, 2017) (mem. op.).

In its motion to dismiss, Staff Care argued the commercial speech exemption did not apply because the wrongful conduct alleged by Eskridge did not stem from services Staff Care offered to Eskridge but instead involved communications from Staff Care to physicians/clients. In its reply to Eskridge's response to its motion to dismiss, Staff Care conceded "it is not disputed that Staff Care is in the business of selling or leasing goods or services." Rather, it emphasized Eskridge's failure to allege wrongful conduct arising out of an actual sale or lease of goods or services. It categorized Eskridge's complaints "at most, show[ing] a commercial motive."

Section 27.010(b), which is commonly referred to as the commercial speech exemption, states the TCPA does not apply:

> to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . , or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).

The Texas Supreme Court has recently explained that the commercial speech exemption applies when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). *Castleman* aligns with the approach taken by other Texas appellate courts, including this one, concluding the challenged statement or conduct must be made "for the purpose of securing sales in the goods or services of the person making the statement." *See Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied).

Staff Care argues the exemption is inapplicable because any alleged communications were not made to the "intended audience." Staff Care contends that as a locum tenens staffing agency, its primary business is to place its independent contractor physicians with various hospitals; therefore, the hospitals are the actual or potential customers of its services. Because its alleged communications related to the independent contract physicians and not to the hospitals, it asserts Eskridge cannot meet the "intended audience" prong. We disagree. Staff Care neglects to consider the business model of a staffing agency in which its primary purpose is to advertise and solicit potential physicians to sign contracts with the staffing agency *and* place those physicians with hospitals. The intended audience encompasses both physicians and hospitals. Here, the alleged communications were made to Staff Care's existing and prospective physicians.

As the *Castleman* court recognized, the commercial speech exemption applies only to "*certain* communications related to services in the marketplace—communications made not as a protected exercise of free speech by an individual, but as 'commercial speech which does "no more

than propose a commercial transaction."'" *Id*. at 690–91. The court further implied the exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue. *Id*. at 691. Here, by telling its physicians and potential physicians they were not permitted to leave or work with Eskridge, Staff Care pursued business for itself and stood to profit from it.

Further, by alleging Staff Care used commercial advertising to induce physicians in the market for services they both provided to hire Staff Care instead of Eskridge and alleging Staff Care tortiously interfered with relationships by telling the physicians they could not leave or work with Eskridge, Eskridge established by a preponderance of the evidence that communications and conduct arose out of a commercial transaction involving the services Staff Care provides. *Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied) (recognizing challenged statement or conduct must be made "for the purpose of securing sales in the goods or services of the person making the statement"); *see also Abatecola v. 2 Savages Concrete Pumping LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *10 (Tex. App.—Houston [14th Dist.] pet. denied (mem. op.) (applying preponderance of the evidence standard of review to application of commercial speech exemption). Accordingly, we conclude the commercial speech exemption applies to Eskridge's DTPA counterclaim, and therefore, the TCPA does not apply. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).[5]

We overrule Staff Care's first issue. Having concluded the TCPA does not apply, we need not consider whether Eskridge established by clear and specific evidence each element of its counterclaims. *See* TEX. R. APP. P. 47. Accordingly, the trial court did not err by denying Staff Care's motion to dismiss as to Eskridge's DTPA and tortious interference counterclaims.

---

[5] Even assuming Eskridge's tortious interference counterclaim was a "matter of public concern," the commercial speech exemption would likewise apply to that counterclaim and preclude application of the TCPA.

–14–

**Conclusion**

We affirm the trial court's order denying Staff Care's motion to dismiss pursuant to the TCPA.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

180732F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STAFF CARE, INC., A WHOLLY
OWNED SUBSIDIARY OF AMN
HEALTHCARE, INC., Appellant

No. 05-18-00732-CV          V.

ESKRIDGE ENTERPRISES, LLC D/B/A
ESKRIDGE AND ASSOCIATES,
Appellee

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-17-17163.
Opinion delivered by Justice Bridges.
Justices Partida-Kipness and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ESKRIDGE ENTERPRISES, LLC D/B/A ESKRIDGE AND ASSOCIATES recover its costs of this appeal from appellant STAFF CARE, INC., A WHOLLY OWNED SUBSIDIARY OF AMN HEALTHCARE, INC.


Judgment entered May 15, 2019.