**AFFIRM; and Opinion Filed May 22, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00654-CV

**JEFFREY ERDNER, D.O. AND THE EMERGENCY CENTER AT WEST 7TH, LLC,
Appellants
V.
HIGHLAND PARK EMERGENCY CENTER, LLC, Appellee**

**On Appeal from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-18-01059**

## OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

Highland Park Emergency Center, LLC (HPEC) sued Jeffrey Erdner, D.O. for breach of

fiduciary duty. It sued The Emergency Center at West 7th, LLC (West 7th) for aiding and abetting

the breach. Specifically, HPEC alleged that Erdner, one of its members, usurped an opportunity

to expand HPEC's business operations for his own personal benefit, communicated with investors

about forming West 7th to capitalize on the opportunity, and misled HPEC and its other members

about his activities.

Appellants filed a motion to dismiss HPEC's claims pursuant to the Texas Citizens

Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (the TCPA). Following a

hearing, the trial court denied the motion. In two issues, appellants argue the trial court erred by

denying the motion to dismiss because the TCPA applies to HPEC's claims and HPEC failed to establish by clear and specific evidence a prima facie case for each element of its claims.

The TCPA applies only if HPEC's claims are based on, related to, or in response to appellants' exercise of one of the rights protected by the statute, each of which requires a "communication." Appellants assert they are entitled to the protection of the statute because Erdner's communications with other investors constituted the exercise of the right of association and the right of free speech, as defined by the TCPA.

We conclude appellants failed to meet their burden of establishing the TCPA applies to HPEC's claims because Erdner's communications did not (1) involve the public or citizen's participation required for the exercise of the right of association or (2) relate to a matter of public concern as required for the exercise of the right of free speech. Accordingly, we affirm the trial court's order denying the motion to dismiss.

**Background**

HPEC, a member-managed limited liability company, operates a freestanding emergency room (FSER) in Dallas. In 2011, Erdner was admitted as a member of HPEC and named as one of its managers. Erdner was considered to be the chief financial officer of HPEC.

On December 16, 2013, Perren Gasc of Centennial Retail Services sent an email to "admin" at HPEC about an "HP Emergency Care Site" in Fort Worth. Gasc indicated the location proposed for a new FSER was a mixed-use project similar to HPEC's location in Dallas. Gasc attached marketing information to the email and inquired as to who would be the best person to speak to regarding the opportunity.

HPEC alleges that Erdner, the only member of HPEC who had access to the "admin" email, became aware of the opportunity but did not disclose it to the other members of HPEC. Instead Erdner contacted investors in Arizona about the opportunity and formed a number of limited

liability companies, including West 7th, to hide his conduct. West 7th ultimately built an FSER in the same area as proposed by Gasc in his email.

Erdner, on the other hand, contends the "front desk" at HPEC monitored the "admin" email, and he did not see the email from Gasc. Rather, he was approached in December 2013 by a neighbor and long-time friend who offered him an investment opportunity. The opportunity was available only to Erdner individually and not to the other members of HPEC. Erdner spoke with HPEC's attorney about the investment opportunity and was told the HPEC Company Agreement did not prevent him from taking advantage of the opportunity and he was not required to tell the other members of HPEC about the opportunity.

Erdner claims that, because he wanted to be transparent, he disclosed his involvement in the investment opportunity to the other members of HPEC. In a July 20, 2014 email to one of the other members, Erdner stated he had been contacted by a start-up medical company, his work for that company would be from home on his own time, and there would be no shift-work. Erdner stated the new company "deals with a variety of aspects, including medical software, hospital management, ER physician contracts, ER physician management, and hospital/ER development." He represented that most of the new company's work "intends to be outside of Texas," but the company was interested in opening "a limited number of free standing ER's in Texas." Erdner stated the new company had agreed to abide by the non-compete clause in HPEC's Company Agreement, and the work would "by no means affect anything from the HPEC standpoint."

On July 25, 2014, Erdner sent another email, this time to all the other members of HPEC. Erdner stated he was not joining a group of doctors whose "mission" was to open FSERs. Rather, the new company had a primary focus of "micro-hospitals" in states in which FSERs were not protected by law. Following its initial discussions with Erdner, the company expressed an interest in "a minimal FSER involvement in Texas and Colorado." Erdner stated that HPEC was his

primary job and responsibility, his commitment and goals toward HPEC were "unwavering," and he would not share "insider information" with the new company.

Erdner withdrew as a member of HPEC on May 2, 2015. West 7th opened an FSER in Fort Worth in June or July of 2016. HPEC alleged that Erdner and his partners subsequently opened an FSER in Arlington and had plans to open one in San Antonio and that Erdner also "parlayed" the initial opportunity for the Fort Worth FSER into four emergency centers in Arizona.

HPEC sued Erdner for breach of fiduciary duty for usurping HPEC's opportunity to open an FSER in Fort Worth and West 7th for aiding and abetting Erdner's conduct. HPEC specifically alleged that Erdner failed to offer or advise HPEC or its members of the Fort Worth opportunity, used "corrupted business judgment" to withhold information about the opportunity from HPEC and its members, made misleading and materially false representations to HPEC and its members about the scope and nature of his separate business dealings, and misappropriated HPEC's confidential and proprietary information for his personal benefit.

Appellants filed a motion to dismiss HPEC's claims pursuant to the TCPA. Appellants asserted that HPEC's claims were based on, related to, or in response to appellants' exercise of their right of association and right of free speech and that HPEC could not produce clear and specific evidence of a prima facie case for each claim. The trial court denied the motion to dismiss, and appellants filed this interlocutory appeal.

**Applicable Law and Standard of Review**

The TCPA "protects citizens . . . from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for

–4–

demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

"To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of [the] First Amendment Rights" protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Elliott*, 564 S.W.3d at 847.

Whether the TCPA applies to HPEC's claims is an issue of statutory interpretation that we review de novo. *See Youngkin*, 546 S.W.3d at 680. In construing the statute, we "ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *Harper*, 562 S.W.3d at 11; *see also Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011) ("Legislative intent . . . remains the polestar of statutory construction." (internal citations omitted)). We consider both the specific statutory language at issue and the statute as a whole. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see also Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an act as a whole rather than from isolated portions of it.").

We endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *In re Office of Att'y Gen.*, 422 S.W.3d at 629; *see also Norman*, 342 S.W.3d at 58 (noting courts should "never" apply requirement that Legislature clearly and unambiguously express its intent to waive immunity "mechanically to defeat the law's purpose or the Legislature's intent"). We apply the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."). Although we must adhere to the definitions supplied by the Legislature in the TCPA, *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Youngkin*, 546 S.W.3d at 680, in the process of applying those "isolated" definitions, we are required to construe individual words and provisions in the context of the statute as a whole, *Youngkin*, 546 S.W.3d at 680–81.

**Analysis**

In their first issue, appellants assert they met their initial burden of showing the TCPA applies because HPEC's claims are based on, related to, or in response to appellants' exercise of the right of association or the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Both the right of association and the right of free speech, as defined by the TCPA, require a "communication," *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2)–(3), which includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic, *id.* § 27.001(1).

The communications referenced in HPEC's petition[1] include (1) Gasc's email about the opportunity to build an FSER in Fort Worth; (2) Erdner's communications with the Arizona investors about opening an FSER in Fort Worth;[2] and (3) Erdner's emails to the other HPEC members in July 2014 in which he allegedly misrepresented the scope and purpose of the company with which he had been having discussions. However, in their appellate brief, appellants rely only on Erdner's communications with the Arizona investors to support their contentions that HPEC's claims are based on, related to, or in response to appellants' exercise of their right of association or of free speech.

*Exercise of Right of Association*

The TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2); *see also Kawcak v. Antero Res. Corp.*, No. 02-18-00301-CV, 2019 WL 761480, at *6 (Tex. App.—Fort Worth Feb. 21, 2019, pet. filed). Appellants argue they met their burden of establishing the TCPA applies to HPEC's claims because Erdner and the Arizona investors communicated to "promote and pursue their common interest in forming an LLC to open and operate an FSER in the West 7th project."

This Court has concluded that "to constitute an exercise of the right of association under the [TCPA], the nature of the 'communication between individuals who join together' must involve public or citizen's participation." *Dyer v. Medoc Health Servs., LLC*, No. 05-18-00472-CV, 2019 WL 1090733, at *5 (Tex. App.—Dallas Mar. 8, 2019, pet. filed) (quoting *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015) (*Coleman I*), *rev'd on*

---

[1] Whether a legal action is based on, related to, or in response to the exercise of a protected right is determined based on the claims made in the non-movant's petition. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

[2] Neither the form nor the actual substance of Erdner's communications with the Arizona investors are in the appellate record. However, the parties do not dispute that the communications occurred and encompassed at least the formation of a company to build an FSER.

*other grounds*, *Coleman II*, 512 S.W.3d at 900–01 (Tex. 2017)). The communications between Erdner and the Arizona investors were private communications relating to establishing a business to open an FSER in Fort Worth. Because those communications did not involve public or citizen's participation, it would be "illogical" for those communications to support a right of association under the TCPA. *Id.*; *Coleman I*, 464 S.W.3d at 847; *Kawcak*, 2019 WL 761480, at *5 (concluding definition of "common" under right of association in TCPA "embrace[s] a larger set defined by the public or at least a group").

We conclude appellants failed to establish the TCPA applies to HPEC's claims based on appellants' exercise of their right of association.

*Exercise of Right of Free Speech*

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). Appellants argue they met their burden of establishing the TCPA applies to HPEC's claims because Erdner's communications with the Arizona investors were made in connection with health, community well-being, and a service in the marketplace.

Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech under the TCPA. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Further, the TCPA does not require that communications specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter. *Coleman II*, 512 S.W.3d at 900. Rather, the TCPA

–8–

applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Id.*

The TCPA, however, "has its limits" and not every communication falls under the statute. *In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.); *see also Dyer*, 2019 WL 1090733, at *6. A private communication made in connection with a business dispute is not a matter of public concern under the TCPA. *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *5 (Tex. App.—Dallas May 15, 2019, no pet. h.) (mem. op.); *see also Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.). Further, if a communication itself does not relate to a matter of public concern, a contention that it will result in a matter of public concern is not sufficient to establish the TCPA applies. *Nguyen v. Hoang*, 318 F. Supp. 3d 983, 1001 (S.D. Tex. 2018).

In this case, HPEC alleges Erdner usurped a corporate opportunity in December 2013. All of Erdner's communications with the Arizona investors occurred after the alleged wrongdoing and related to the formation of a business that was considering offering healthcare services in the marketplace in the future. There is no evidence that Erdner's communications with the Arizona investors were about the existence of healthcare services in the market or an issue relating to current community well-being; rather, at most, the communications were about the formation of a business and the possible scope of its future activities. Using a "wispy" definition of "tangential," the dissent argues those communications are tangentially related to health and community well-being because the communications "projected" or "proposed" the building of an FSER. The dissent then attempts to analogize Erdner's communications about the formation of a business to a situation where citizens are discussing a proposal to build a nuclear power plant in their community, presumably by a business already in existence and ready to offer that service.

–9–

Erdner's communications, however, did not involve a proposal to the community to build anything anywhere. Rather, those communications involved, at most, the potential formation of a company that might, in the future, have the resources to acquire the right to build an FSER somewhere in a general area. The fact that the communications could result in healthcare service being offered to the public at some location at some point in the future is not enough to bring them within the scope of the TCPA. *See Nguyen*, 318 F. Supp. 3d at 1001.[3]

We recognize that we may not "substitute the words of a statute in order to give effect to what we believe a statute should say." *Coleman II*, 512 S.W.3d at 901. However, in defining "exercise of the right of free speech" in the TCPA, the Legislature required that a protected communication be made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). This statutory requirement is satisfied if the communication has a "tangential relationship" to a matter of public concern. *Coleman II*, 512 S.W.3d at 900. But, a communication cannot have a "tangential relationship" to a matter of public concern that does not yet exist. *See Nguyen*, 319 F. Supp. 3d at 1001.

Further, if a "matter of public concern" encompasses communications about possibly forming a business that intends at some point to offer healthcare or other goods, products, or services in the marketplace, no communication pertaining to a business that offers, or intends to offer, such goods, products, or services would fall outside the reach of the statute. Construing the statute to denote that all private business discussions are a "matter of public concern" if the business offers a good, service, or product in the marketplace or is related to health or safety is a potentially absurd result that was not contemplated by the Legislature. *See, e.g., Brugger*, 2016

---

[3] The communications in this case, therefore, are distinguishable from those in *Coleman II*, which involved oral discussions about an employee's alleged failure to gauge a storage tank, implicating existing environmental, health, safety, and economic risks, *see Coleman II*, 512 S.W.3d at 901, and *Lippincott*, which involved email communications about a healthcare provider's failure to provide adequate care to patients, implicating existing health concerns, *see Lippincott*, 462 S.W.3d 509–10.

–10–

WL 4444036, at *3 (concluding communications made in connection with business dispute was not matter of public concern under TCPA); *I-10 Colony, Inc. v. Lee*, No. 01-14-00465-CV, 2015 WL 1869467, at *5 (Tex. App.—Houston [1st Dist.] Apr. 23, 2015, no pet.) (mem. op.) (concluding that because fraud claim was based on allegation that lawyer fraudulently represented to plaintiff that lawyer would comply with a previous judgment, rather than on communications about lawyer's service in the marketplace, TCPA did not apply).

We conclude appellants failed to establish the TCPA applies to HPEC's claims based on appellants' exercise of their right of free speech.

**Conclusion**

We resolve appellants' first issue against them and affirm the trial court's order denying appellants' TCPA motion to dismiss. Based on our resolution of appellants' first issue, we need not address their second issue. TEX. R. APP. P. 47.1.

/Ken Molberg/
KEN MOLBERG
JUSTICE

180654F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEFFREY ERDNER, D.O. AND THE
EMERGENCY CENTER AT WEST 7TH,
LLC, Appellants

No. 05-18-00654-CV      V.

HIGHLAND PARK EMERGENCY
CENTER, LLC, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-18-01059.
Opinion delivered by Justice Molberg,
Justices Whitehill and Reichek
participating.

In accordance with this Court's opinion of this date, the trial court's May 21, 2018 order denying appellants Jeffrey Erdner, D.O. and The Emergency Center at West 7th, LLC's motion to dismiss pursuant to the Texas Citizens Participation Act is **AFFIRMED**.

It is **ORDERED** that appellee Highland Park Emergency Center, LLC recover its costs of this appeal from appellants Jeffrey Erdner, D.O. and The Emergency Center at West 7th, LLC.

Judgment entered this 22nd day of May, 2019.