

# NUMBER 13-23-00176-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MICHAEL NEUMAN, INDIVIDUALLY
AND DERIVATIVELY ON BEHALF OF
ROCKPORT AREA ASSOCIATION OF
REALTORS, INC.,                                           Appellant,

v.

KEITH HAMILTON, GEMMA ANTHONY,
AND JENNIFER BRADSHAW, AS
EXECUTIVE OFFICERS AND MEMBERS
OF THE BOARD OF DIRECTORS OF THE
ROCKPORT AREA ASSOCIATION OF
REALTORS, INC.,                                           Appellees.

## On appeal from the 36th District Court
of Aransas County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Longoria, and Tijerina
Memorandum Opinion by Justice Tijerina

Appellant Michael Neuman, individually and derivatively on behalf of Rockport Area Association of Realtors, Inc. (RAAR), appeals the trial court's denial of his motion to dismiss a countersuit filed by appellees Keith Hamilton, Gemma Anthony, and Jennifer Bradshaw, as executive officers and members of the board of directors of RAAR (collectively, the Board). By two issues, Neuman contends (1) that his First Amendment rights were stifled by the Board's defamation countersuit, and he is therefore entitled to a dismissal pursuant to the Texas Citizens Participation Act (TCPA); and (2) the trial court abused its discretion by awarding attorney's fees to the Board. We affirm.

## I. BACKGROUND

Neuman is a licensed real estate broker and agent with offices in Aransas County, Texas, and a member of RAAR, which is either a private, non-profit corporation or a trade association consisting of local realtors and brokers. Neuman sued the Board for (1) a declaratory judgment regarding several of RAAR's internal operating procedures including: the RAAR members' right to inspect RAAR's books and records, right to vote, and on whether the Board "failed to certify election of officers and establish the validity of board and committee decisions"; and (2) breach of fiduciary duty on behalf of RAAR's members.

The Board countersued for defamation. In its petition, the Board alleged that Neuman: (1) "engaged in defamatory, disparaging, intimidating, and unlawful conduct against" the Board "by falsely and recklessly providing misinformation relating to RAAR"; (2) "constantly email[ed] and contact[ed] RAAR members"; (3) made "statements and comments that completely mischaracterized events at the RAAR Board meeting on

2

September 12, 2022"; and (4) accused the Board after the September 12 meeting "of discrimination and intentional humiliation of [Neuman]." According to the Board, "[s]uch actions and communications have not only caused [the Board] to feel threatened and intimidated but also presented incorrect and misleading information to all others present at the RAAR Board meetings and the RAAR membership in general." The Board claimed that each of their reputations had been "damaged" and that each had "been receiving phone calls and emails from RAAR members who are extremely upset by these misleading and false communications that caused [each] to be negatively emotionally impacted, taking valuable time away from their real estate careers and costing them money." The Board stated that Neuman's "wrongful conduct" in defaming the Board also violated RAAR's bylaws.

Neuman then filed a motion to dismiss the Board's countersuit pursuant to the TCPA. In his motion, Neuman claimed that he was "forced" to sue the Board because the Board "blocked" him "from obtaining RAAR's organizational books and records, which they are required by law to keep and disclose to RAAR's members." Neuman argued that the trial court should dismiss the Board's counterclaim under the TCPA "because it is a direct response to [his] exercise of his right to petition (through this proceeding), right to free speech concerning RAAR's operations, and right to free association with RAAR members regarding [the Board's] insular culture of obfuscation."

Specifically, as to the violation of his right to free speech, Neuman stated, "By this lawsuit and through his email newsletter, Mr. Neuman has raised issues regarding RAAR's operations, its organizational controls, the competency of its leadership, and the

validity of RAAR's elections and official actions. This lawsuit is a direct result of [the Board's] inability or unwillingness to produce RAAR's books and records as required by law." As to the violation of his right of association, Neuman alleged that the Board's countersuit "attempt[ed] to penalize [him] for asking questions about RAAR's operations and the validity of its elections, committee operations, and organizational decisions." As to violation of his right to petition, Neuman argued that the Board's countersuit was "in response to" his filing suit against the Board "to lawfully produce RAAR's books and records." Neuman further alleged that the Board is unable to establish by clear and specific evidence a prima facie case for each essential element of" its defamation claim.

The Board filed a response stating that the communications at issue were not matters of public concern. The Board also stated that it had established a prima facie case. Neuman filed a response stating that the Board's counterclaim for defamation involves a matter of public concern under the TCPA, which he argued is broad and would cover statements made at RAAR's meetings. Neuman argued that RAAR meetings "were designated for member participation at an agencywide meeting—*precisely the forum for public participation in RAAR's business.*" Neuman claimed that the Board's complaints involved statements he made when he "reached out to an agencywide audience with his concerns about" the Board's "endemic lack of transparency." Neuman stated that the Board's countersuit challenged his "very public actions and communications about issues of concern to all constituents" and that the Board's "own pleading clearly demonstrates that 'matters of interest to the community' and 'subjects of public concern' are at play." Neuman's response focused mostly on his assertion that RAAR is a community for

purposes of the TPCA. He said, "RAAR is more appropriately viewed as a subset of the broader community; and 'even communications made in a private forum will fall under the TCPA when they involve a public subject.'" Neuman pointed out that RAAR's own founders recognized RAAR's importance to the community and that "RAAR's very existence is evidence of a joining together to pursue common interests related to [the] Rockport area real estate market."

The trial court denied Neuman's motion to dismiss. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).

## II. MATTER OF PUBLIC CONCERN

By his first issue, Neuman contends that the trial court erred by denying his TCPA motion to dismiss because the Board's countersuit is based on or is in response to his right of free speech. *See id.* § 27.005(2); *In re Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015) (orig. proceeding). Specifically, he argues that the allegations by the Board that Neuman "mischaracteriz[ed] events" and that Neuman "accus[ed] [RAAR board members] of discrimination and intentional humiliation" fall under the TCPA because each of these alleged statements constitutes a communication made in connection with a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3).

A "'matter of public concern' means a statement or activity regarding":

(A)   a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B)   a matter of political, social, or other interest to the community; or

(C)   a subject of concern to the public.

5

*Id.* § 27.001(7).

In *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, the Supreme Court of Texas noted that "the phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). The *Creative Oil* court explained that when construing the previous statute's language that matters of public concern include topics such as "a good, product, or service in the marketplace," we should not view the language in isolation. *See id.* Therefore, as viewed in context with the rest of the statute, that language does not include matters of a purely private concern. *See id.* at 135–36. Thus, the *Creative Oil* court held that the party's counterclaims that were "based on private business communications to third-party purchasers of a single well's production," which "allegedly caused the third-party purchasers to refuse to pay the Lessee and the Operator their share of the proceeds from this production" had no relevance to the broader marketplace or otherwise could [not] reasonably be characterized as involving public concerns." *Id.* at 136.

The *Creative Oil* court stated, "On the contrary, the alleged communications were made to two private parties concerning modest production at a single well." *Id.* The court explained that "communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA." *Id.* The *Creative Oil* court set out that it had previously found private communications were matters of public concern in limited situations which "had public relevance beyond the pecuniary interests of the private parties involved." *Id.* The court further noted, "A private

6

contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* at 137. Thus, to constitute a matter of public concern, the communication must be relevant to the public beyond that of the parties' private interests. *Id.*

In *McLane Champions, LLC v. Houston Baseball Partners LLC*, the Supreme Court of Texas applied the former version of the TCPA which defined matters of public concern as including issues related to, in relevant part, health or safety, environmental, economic or community well-being or a good, product or service in the marketplace. 671 S.W.3d 907, 914–16 (Tex. 2023). The *McLane* court stated that after reviewing previous cases, "communications that are merely 'related somehow to one of the broad categories' set out in the statute but that otherwise have no relevance to a public audience are not 'communications made in connection with a matter of public concern.'" *Id.* The *McLane* court noted that previously it construed the phrase "'communication made in connection with a matter of public concern' in a broad, but not limitless, manner." *Id.* at 915. Thus, it has "held that some—but certainly not all—private communications may be made in connection with a matter of public concern and thus subject to a TCPA motion to dismiss." *Id.* The *McLane* court explained that in two previous cases, private communications implicated the right of free speech under the TCPA when those communications "held some relevance to a public audience when they were made." *Id.* at 916. "The communications themselves must relate to a matter of public concern." *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 828 (Tex. App.—Dallas 2020, pet. denied). The communications must not simply be between private parties on matters of a purely private

7

concern." *Id.*

The *McLane* court stated that "[c]onstruing the TCPA to cover communications that hold some relevance to a public audience when they are made is also more consistent with the ordinary meaning of the phrase 'in connection with.'" *McLane Champions, LLC*, 671 S.W.3d at 916. Citing the definition of "in connection with," the *McLane* court explained that the complained-of communications "must have some relevance to a public audience" otherwise "the TCPA would apply to communications made as part of any private business deal involving industry that impacts economic or community well-being" and "[i]t does not." *Id.* The *McLane* court further set out that "the statute's plain terms impose a temporal anchor on the relationship between the" complained-of communications "and the matter of public concern" meaning that "the 'connection' between the [complained-of] communication and the matter of public concern must exist when the communication is made." *Id.* "That is, a communication cannot be made in connection with a matter of public concern unless it had relevance to a public audience at the time it was made, regardless of the happenstance of after-the-fact ramifications." *Id.* at 917. This is so to ensure "that the TCPA is not transformed into a far-reaching procedural mechanism for obtaining early dismissal of cases well beyond the statute's express purpose." *Id.*

Here, the Board's countersuit focuses on Neuman's communications that it alleges constituted misinformation relating to the Board, which included "making statements and comments that completely mischaracterized events at the RAAR Board meeting on September 12, 2022[,] and afterwards and accusing [the Board] of discrimination and

8

intentional humiliation of Neuman." According to the Board, Neuman's communications via emails to specific RAAR members violated the bylaws and constitute defamation as they "presented incorrect and misleading information to all others present at the RAAR Board meetings and the RAAR membership in general," which have "damaged the reputations of . . . RAAR board members, and employees." The Board further claimed that Neuman's communications caused RAAR members to call and email the Board, which in turn caused them to spend additional time and money on correcting these allegedly false and misleading communications. Neuman himself acknowledged in his pleadings in the trial court that he "has raised issues regarding RAAR's operations, its organizational controls, the competency of its leadership, and the validity of RAAR's elections and official actions" and that "[t]his lawsuit is a direct result of [the Board's] inability or unwillingness to produce RAAR's books and records as required by law."

To prevail on his TCPA motion to dismiss based on the violation of his freedom of speech, Neuman must have shown that his communications "had relevance to a public audience at the time [they were] made, regardless of the happenstance of after-the-fact ramifications." *Creative Oil*, 591 S.W.3d at 135. However, according to the Board's petition, the communications that form the basis of their counterclaim is limited to internal management and operations of RAAR. Nothing in the Board's pleadings indicates that at the time Neuman made them, the complained-of email communications were relevant to matters "'of political, social, or other concern to the community,' as opposed to purely private matters." *Id.* Moreover, nothing in the Board's pleading indicates that the complained-of communications were relevant to the public beyond that of the parties'

9

private interests. *See id.* In his brief, Neuman concedes that the dispute concerns RAAR's books and records. He does not state that or explain how his communications were relevant to the public beyond that of the parties' private interests and instead merely asserts that his communications were made in a public forum.

Neuman further argues that his communications involve a public subject. However, under a de novo standard of review, the complained-of communications only involve the private interests of the internal operations of RAAR. Additionally, although Neuman alludes to the public's general interests in how RAAR operates, broadly speaking, a general interest in an organization "does not mean that the statements were made in connection with a matter of public concern under the TCPA." *McLane Champions, LLC*, 671 S.W.3d at 917.

The Board claims that the communications caused them to spend additional time and money on correcting them and that their reputations with RAAR members required rehabilitation. Assuming that these allegations are true, the Board's correction of the alleged misrepresentations had no obvious effect on the public and would have only been relevant to RAAR. *See id.* at 918 (explaining that "[t]he effect on the public writ large . . . was the same" in that the Network would fail regardless of whether Partners purchased the team). Thus, the Board's complaint that Neuman's communications harmed them is connected to the Board's internal management and operations of RAAR under the bylaws and is therefore a matter of private and not public concern. *See id.* Accordingly, whether RAAR membership constitutes its own community is irrelevant to whether this matter is of a public concern. *See id.*

10

Therefore, we conclude that Neuman failed to show by a preponderance of the evidence that the TCPA applied to the Board's counterclaim. *See id.*; *see also Day v. McHazlett*, No. 13-21-00124-CV, 2023 WL 2422499, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, no pet.) (mem. op.) (concluding that a defamation suit concerning an allegation of sexual harassment was not a matter of public concern because it "occurred in a private employment office setting"). Because Neuman has not established that the TCPA applies to the claim, the burden never shifted to the Board to establish by clear and specific evidence a prima facie case for each element of their claim, and therefore, the trial court properly denied the TCPA motion to dismiss. We overrule Neuman's first issue.[1]

### III. ATTORNEY'S FEES

By his second issue, Neuman contends that the trial court abused its discretion by awarding attorney's fees to the Board.[2] The Board responds that the trial court correctly

---

[1] To the extent that Neuman argues his right to assembly was violated, this argument would fail because his communications do not relate to a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 (setting out that the right of association requires that the party joins together "to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern"). As to Neuman's claim that his right to petition was violated, we disagree because he has not alleged or shown that his communications pertained to a judicial proceeding or an official proceeding. *See id.* § 27.001(4)(A)(i), (ii). Neuman's made his statements before he filed his lawsuit. Thus, the complained-of statements were made pre-litigation, and those statements pertained to actions taken by the Board in response to Neuman's allegations that the Board had not complied with the bylaws prior to his suit. All of the complained-of statements were made in a non-litigation setting and did not pertain to anything occurring in Neuman's suit. Thus, the Board's counterclaim does not implicate Neuman's right to petition. *See id.*; *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (concluding that the plaintiff's right to petition had been violated because the communications were recited in open court and agreeing that entering the communication in the judicial record constituted a communication or statement made in a judicial proceeding); *see also Doe v. Cruz*, No. 04-21-00582-CV, 2023 WL 8246181, at *6 (Tex. App.—San Antonio Nov. 29, 2023, no pet.) (mem. op.) (determining that a counterclaim based on a photograph that had been attached to an amended petition in the original suit violated the plaintiff's right to petition because the photograph pertained to a judicial proceeding).

[2] By a sub-issue to his second issue, Neuman asserts that the trial court abused its discretion by failing to award him attorney's fees. However, because we have affirmed the trial court's denial of his TCPA

awarded it attorney's fees because Neuman's motion to dismiss was frivolous.

As relevant here, § 27.009 allows the trial court to award the non-moving party attorney's fees if it "finds" that the motion to dismiss is frivolous. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b). An appellate court reviews the award of attorney's fees pursuant to the TCPA for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). "A trial court abuses its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'" *Id.* (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

Although "frivolous" is not defined in the TCPA "numerous courts have noted that its common understanding contemplates that 'a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit.'" *Doe v. Cruz*, No. 04-21-00582-CV, 2023 WL 8246181, at *17, __ S.W.3d __, __, (Tex. App.— San Antonio Nov. 29, 2023, no pet.) (internal quotations omitted) (quoting *Jones v. Frisco Fertility Ctr., PLLC*, No. 05-21-00008-CV, 2022 WL 17248837, at *8 (Tex. App.—Dallas Nov. 28, 2022, pet. denied) (mem. op.)). Such common meanings of frivolous as contemplated in the TCPA include: "a claim or motion" that has "'no basis in law or fact, . . . and 'lack[s] a legal basis or legal merit.'" *Sullivan*, 551 S.W.3d at 857. "[T]he fact that a motion to dismiss under the TCPA is ultimately denied is not sufficient, in and of itself, to support a finding that the motion was frivolous*." Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 244 (Tex. App.—Eastland 2019, no pet.).

---

motion to dismiss, Neuman is not entitled to attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a) (requiring award of fees "if the court orders dismissal of a legal action under this chapter"). We overrule this sub-issue. *See id.*; *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 243 (Tex. App.— Eastland 2019, no pet.).

"[P]rior to filing the motion to dismiss, the movant must evaluate whether there is a legal basis to assert that the nonmovant's legal action is based on, related to, or in response to the movant's exercise of a right protected by the statute." *Caliber Oil & Gas, LLC*, 591 S.W.3d at 243–44 (citing CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005). As further explained below, Neuman's motion to dismiss lacked such an evaluation. *See id.*

In his motion to dismiss, Neuman did not address how the Board's counterclaim for defamation relating to a private organization's internal operating procedures is a matter of public concern. In his motion, Neuman acknowledged that "[b]y [his] lawsuit and through his email newsletter, [he] has raised issues regarding RAAR's operations, its organizational controls, the competency of its leadership, and the validity of RAAR's elections and official actions." Neuman stated, the Board's countersuit "attempts to penalize [him] for asking questions about RAAR's operations and the validity of its elections, committee operations, and organizational decisions." However, he did not provide any argument to substantiate his claim that these matters fell under the purview of the TCPA because he failed to argue or explain how these matters relate to a matter of public concern. Finally, regarding his right to petition, Neuman merely stated that the Board countersued him for defamation after he filed his lawsuit against the Board. Neuman made no claim that the Board's lawsuit involved his statements that pertained to a judicial or an official proceeding. *See* TEX. CIV. PRAC. REM. CODE ANN. § 27.001(4)(A)(i), (ii).

Therefore, on this record, we cannot conclude that the trial court abused its discretion when it determined that Neuman's motion to dismiss was frivolous. We overrule

13

Neuman's second issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Dissenting Memorandum Opinion by Justice Benavides.

Delivered and filed on the
29th day of February, 2024.